Shamokin Borough v. Shamokin and Mount Carmel Electric Railway Company.

*Street railways—Removal of tracks—Boroughs.*

A street railway company which has received permission from a borough to lay two tracks on a street, may, in the absence of any provision to the contrary in the ordinance giving consent, take up one track and remove it entirely, but cannot change the location of the other without the consent of the borough.

Argued May 21, 1900. Appeal, No. 380, Jan. T., 1899, by plaintiff, from decree of C. P. Northumberland Co., in equity, No. 225, on bill in equity in case of the Borough of Shamokin v. Shamokin and Mount Carmel Electric Railway Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity for an injunction.

The facts appear by the opinion of McCLURE, P. J., specially presiding, which was as follows:

From the bill, answer and proofs submitted the following facts are found:

1. The complainant is a municipal corporation duly incorporated under the laws of Pennsylvania, and as such corporation possesses all the powers, privileges and immunities, and is subjected to all the duties granted and imposed upon the several boroughs within this commonwealth, by the act of April 3, 1851, and the several supplements thereto.

2. That the territory comprised within the limits and bounds of the said borough of Shamokin is situate within the county of Northumberland, said borough having been granted a charter of incorporation by the court of quarter sessions of said county on November 9, 1864.

3. That M. C. Farrow is the chief burgess, duly elected to serve as such, and F. P. W. Haas, T. A. Holl, John Drumheiser, Richard Phillips, R. Hollenback, J. J. Peifer, Henry Bullock, B. E. Adams, Patrick Smith, J. J. Delaney, G. C. Unger, W. S. Zimmerman, W. A. Reppard, R. V. Thompson, O. J. Reed, W. A. Seitz, W. Van Gasken, E. O. Zuern, William Mensch and Nicholas Timmes comprise the borough council of the said borough of Shamokin.

4. That as such borough the complainant is authorized by law, among other things, to grant or withhold its consent to the occupancy of its streets and roads by an electric or other railway company; and can impose conditions under which the right of way may be enjoyed.

5. That the town council of the borough of Shamokin, at the solicitation of the defendant company, passed an ordinance on March 2, 1893, granting the right of way over and upon Sunbury street and other streets, with the object of enabling said company to construct and operate a street railway within the borough limits.

6. That the defendant is a Pennsylvania corporation, incorporated under the provision of the Act of May 14, 1889, P. L. 211, and accepted in writing the terms and conditions imposed by said ordinance.

7. By the 1st section of the ordinance permission was granted the defendant to construct and lay one single railway track on

and upon, among others, Sunbury street in said borough, " with the necessary switches, turnouts and sidings, provided, however, that the said railway track, switches, turnouts and sidings are in all cases to be located under the supervision of the committee on streets and highways."

8. The 3d section of the ordinance reads as follows : " Section 3. The track of said railway shall be laid to grade of the several streets and highways used and occupied by said company as aforesaid for any of its erections or structures and shall in no instance be changed or altered except under the direct supervision of the borough council and by resolution or ordinance duly adopted or enacted for that purpose ; and (in) every case the said company in laying its tracks shall strictly conform to existing grades, unless the consent be given by the authority aforesaid to their change or alteration, in which event its tracks shall be so fixed, laid and adjusted as to conform strictly to the altered grades, and the said railway company shall at any and all times hereafter, at its own cost and charge, take up and change its railway so as to conform to such grades, heights and slopes as may from time to time be legally fixed by the municipal authorities of said borough."

9. The 9th section of the ordinance provides that : " The said railway company shall at its own expense in addition to keeping said streets in good repair pave said portion of the streets on which it passes with asphaltum, fire brick or other suitable material whenever and as fast as the borough of Shamokin shall pave the other part of said streets, the material used to be subject to the approval of the town council, and in like manner shall pave the streets wherever turnouts shall be laid the entire width thereof between the curb lines for the full length of said turnouts and thirty feet beyond the extreme ends of such turnouts, and the said company shall at all times without delay, upon five days' notice given by the chief burgess, repair and pave inside and outside of said tracks and turnouts whenever the same is out of repair, or if paved, the paving shall get out of repair, and upon failure of said company so to do, the borough of Shamokin shall do the work, and recover the expenses thereof with a penalty of twenty per centum of cost of such work added thereto in an action at law against the company."

10. Under the direction and supervision of the committee on streets and highways the defendant constructed a single track or line of railway as provided in said ordinance, "beginning at the borough line near Sixth street, thence along and upon Sunbury street to Shamokin street, thence along and upon Shamokin street to Commerce street, thence along and upon Commerce street to Mt. Carmel street, thence along and upon Mt. Carmel street to the eastern boundary line of said borough." Upon Sunbury street between Liberty and Rock streets at the time of the construction of the single track a siding was built north of the main track and connected therewith at Liberty and Rock streets. On account of the limited width of the street at this point, and objections made by property owners along it, the main track was laid south and the siding an equal distance north of its center line, thus giving the appearance of a double track railway. The siding is upwards of 400 feet in length, is located near the Northern Central and Reading Railway passenger stations and was intended for the use of cars to be operated between Hickory Ridge and Shamokin. As the Hickory Ridge branch was never built, a siding was not needed in the operation of the road, and it has been occasionally used as a place for the temporary storage of cars.

11. The siding being unnecessary for the successful operation of the line of railway its maintenance was burdensome to the company, and it has for some years desired to take it out and straighten the track. This is evidenced by a letter of Mr. Smith, the president of the company, dated June 21, 1897, and directed to the chief burgess and town council wherein he, on behalf of his company, requests the privilege of shortening the "loop" by the removal either of the part lying east of Washington street or the part west of that street. On failure to grant either request he stated that the company would exercise its right to remove one of the lines of track at any time it might see proper to do so. July 6, 1897, the council acted on this request and authorized the chief burgess to notify the railway company "that the borough would insist on the contract as it at present exists."

12. December 13, 1898, the burgess approved an ordinance for the paving of Sunbury street with vitrified brick, and on May 31, 1899, the contract was entered into with the Alcatraz

Paving Company to do the work. By this ordinance the railway company was directed to pave so much of the street as is required by the ordinance granting it the right of way, and on failure so to do the chief burgess and committee on streets and highways are authorized to pave and collect the cost thereof from the company.

13. The company was about to take out the southern track on Sunbury street and move the north track over to the center of the street thus making a straight single track or line of railway through this portion of the street. Permission so to do had not been obtained from councils or the committee on streets and highways and it was protested against by the chief burgess. A bill was then filed and an injunction issued to restrain the threatened action of the company on the ground that it " is contrary to law and prejudicial to the interests of the borough of Shamokin." This is denied in the answer and it is claimed that the reduction of the number of tracks and straightening the line " would be to the advantage of the citizens of said borough, and especially to those residing on Sunbury street."

14. That the proposed change would be beneficial to the abutting property owners, to the renters and business men and to all persons who ride or drive upon the street, can scarcely be questioned. We have testimony to the contrary to be sure, witnesses who own property on the street have given as their opinion that the two tracks with, curves, frogs and switches are not more injurious than a single straight one, but this opinion was more or less influenced by the fact that with a single track they might have to face an assessment for paving. Councils knew that two tracks would be burdensome and annoying, for in the ordinance granting the right of way they prescribed a penalty of paving the street from curb to curb the entire length and thirty feet beyond the end of each turnout.

15. While the siding seems to be unnecessary for the successful operation of the railway, and the company has for years desired to remove it, the right claimed to take out one track whenever it saw fit to do so, was not attempted to be exercised until after the excavation of the street for the paving. As with this siding or turnout in the street the company under its contract with the borough must pay the cost of paving from curb to curb it is very plain that the contemplated action was not

prompted by the uselessness of the tracks alone. We are well satisfied, that a desire to avoid this liability was a potent factor.

16. Although this was a hearing on rule to show cause why the preliminary injunction should not be dissolved, by agreement of counsel it was made the final hearing on the merit of the bill.

### OPINION OF THE COURT.

This a novel case. Railway tracks have always been considered a burden on a street and treated as such. Only municipal authorities in whom the power has been vested can impose this servitude on the abutting property, and all contests have been waged to prevent the incumbrance. Here the proposed change in the tracks of the railway company would greatly improve the street and benefit the property owners, their tenants and all persons having occasion to drive on it.

Wherein the taking up of the south track and the moving of the north one to the center of the street is "prejudicial to the interests of the borough of Shamokin" is not set forth in the bill. Not a word can be found in that paper relating to paving, and the answer following its averments is also silent on the subject. The purpose of the introduction of the evidence relating to the paving of the street was to show wherein the removal of the track was prejudicial to the interest of the borough, and that the uselessness of the siding was not the sole cause for taking up the track as might be inferred from the fifth paragraph of the answer. But the terms of the contract relating to paving, or how, or why the removal of the track at this time will relieve the company from liability is not set forth in the bill. That an ample remedy at law has been provided in the ordinance for every default of the company in that line, may account for its not being introduced here.

Nor is it charged that the purpose of the company was to avoid liability, or that the motive which prompted the action in any way affected its right to take up the tracks. Complainant's whole case is rested on the 1st and 3d sections of the ordinance granting the right of way with the reservation of supervisory powers to council and the street committee, and it is contended that under this ordinance, which is the contract between the parties, no rail can be changed, taken up, or removed without permission of the municipal authorities. This is denied by the

respondents and thus the issue is raised. Its determination depends entirely upon the construction of the above sections of the ordinance. As the company contemplates the relocation of one track and the taking up and removal of another, two questions present themselves. By the 1st section the " railway track, switches, turnouts and sidings are in all cases to be located under the supervision of the committee on streets and highways." To hold that when the main track and sidings were once placed on the ground that the duties of the committee were at an end and their power of supervision exhausted, would be a cramped construction of the section. In effect this would turn over the streets to the railway company and they could relocate their tracks at will, changing them from side to side regardless of the rights of property owners and the traveling public. It is clear to us that if the company want to change the location of either the main track or siding, consent of the street committee must first be obtained.

Nothing in this section bears on the right of the company to take up, remove or abandon a track or siding, and if any prohibition exists it must be in the 3d section of the ordinance. If we take that part of the section printed in the bill alone the borough would have a clear case. By it the track shall in no instance be changed except under the direct supervision of the borough council. But the whole section is one cumbersome sentence which treats of grades, " the track shall be laid to grade, shall strictly conform to existing grades, unless consent be given to their change or alteration, in which event, shall conform to altered grades, company shall take up and change railway so as to conform to such grades, as may be fixed by the authorities, " etc. Only by reading the entire sentence can one gather its true meaning. By doing so we are led to the conclusion that when in the first clause it says, " the track shall be laid to grade, and shall in no instance be changed, " the change meant is one of grade and that such change can only be made by resolution of council.

Thus the location and relocation of a track or siding upon the streets, and the changes and alterations necessary to conform to the grades thereof, are kept within the supervision of the municipal authorities, but no restriction is placed on the rights of the company to take up and remove a siding if it finds

it to its interest so to do. Whether this was because it was thought the taking up of any portion of the track would by that much reduce the burden on the streets, or, owing to the belief that this was a progressive company and would want more room rather than less, the present situation was not anticipated, is not material. We must take the contract as the parties have made it.

The apprehensions of council that if the company be permitted to take up the tracks now, they will lay it again after the paving is completed on the plea that it is necessary for the operation of the road, under the decisions in Wyoming Boro. v. Wilkes-Barre, etc., Ry. Co., 8 Kulp, 113, and Pottsville Boro. v. People's Ry. Co., 148 Pa. 175, cannot affect this case.

On this score we think the borough authorities have little to fear. Every cause must be decided on its own facts, and this company in view of the testimony here introduced by it would present a vulnerable front in such an issue.

We have no doubts as to the jurisdiction of this court. No averment or proof of irreparable damage is necessary where companies exceed their powers in dealing with other peoples' property. The threatened invasion of the rights of the borough authorities to control the streets is all that is needed: Commonwealth v. Pittsburg, etc., Railroad Company, 24 Pa. 159; Penna. R. Co.'s Appeal, 115 Pa. 514.

Failure to file a bond would have been fatal to the proceeding had objections been raised in time, as counties and cities are the only municipal bodies excepted from the provisions of the act requiring a bond with sureties as a prerequisite to the issuing of an injunction.

But this by agreement of counsel is the final hearing on the bill, which conclusively settles the rights of the parties. As Chief Justice BLACK in Com. v. Franklin Canal Co., 21 Pa. 117, speaking of the act says, " We cannot doubt that it was intended to prevent men's rights from being jeoparded by special injunctions awarded during the pendency of causes."

Objections to the bond will not avail on final hearing, as the only question there is whether the complainant is entitled to the relief prayed: 2 High on Injunctions, p. 1022, sec. 1608.

We conclude then as matters of law :

1. That under the contract between the borough and the

railway company as contained in the ordinance granting the right of way, the company cannot change the location of the north track to the center of the street without the consent of the committee on streets and highways, and in so far as this threatened action of the company is concerned the injunction will be made perpetual.

2. That nothing in the contract binds the company to keep the south track in place but it can be taken up and removed from the street.

3. As the duty to pave the street is not here in issue, whether the removal of the south track by the company at this juncture, after the contract for paving has been let, will release it from its obligations under the ordinance is not decided, and no order should be made prejudicial to the rights of the borough to invoke the prescribed legal remedy.

4. Each party should pay one half the costs.

### DECREE.

And now, to wit: October 10, 1899, this cause came on to be heard on final hearing on bill, answer and proofs at this term, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz :

That the defendant, the Shamokin and Mount Carmel Electric Railway Company, its officers, servants, agents and employees be and are hereby perpetually enjoined and restrained from taking up the north track, moving it to the center of the street, or in any manner changing its present location. That the defendant company is not obliged to keep the south track in its present place, the injunction is dissolved as to this track and the company can take it up and remove it from the street. The paving of the street not being in issue, whether the removal of the south track by the company, after the contract for paving the street has been let by the borough, will release the company from its obligation under the ordinance to pave the street, is not decided. This decree is made without prejudice to the right of the borough to invoke its legal remedy for the cost of the street paving, according to the terms and conditions set out in the contract between the parties.

Each party to pay one half the costs of this proceeding.

*Error assigned* among others was the portion of the decree relating to the removal of the second track.

*J. W. Gillespie,* with him *William H. Unger,* for appellant.— After the tracks and turnouts were once laid as located by the authorities, we claim that the rights of the parties are reciprocal. That neither party can move the track or turnouts off the street; the defendant cannot do so by saying they were placed there by a misconception of the necessity of such track or siding for the successful operation of the road, nor the local authorities by declaring it is a nuisance upon the streets. Either party attempting this would be invading a legal right and the court would enjoin such action. If the law be transcended or disobeyed, the act may be restrained: Northern Central Ry. Co. v. Harrisburg, etc., Electric Ry. Co., 177 Pa. 142; Cumberland Valley R. R. Co. v. Harrisburg, etc., Electric Ry. Co., 177 Pa. 155; Com. v. Pittsburg, etc., R. R. Co., 24 Pa. 159; Hunter's App., 40 Pa. 195; Walters v. McElroy, 151 Pa. 549; Easton Pass. Ry. Co. v. Easton, 133 Pa. 505.

*S. P. Wolverton* and *Voris Auten,* for appellee, were not heard but argued in their printed brief: The company had the right to remove the track: Borough of Pottsville v. People's Ry. Co., 148 Pa. 175; Hestonville, Mantua & Fairmount Pass. R. R. Co. v. Philadelphia, 89 Pa. 210; People's Pass. Ry. Co. v. Baldwin, 14 Phila. Rep. 231.

PER CURIAM, May 23, 1900:

The decree is affirmed upon the opinion of the court below.