Sternberg v. State.

---

36   307,
36   319

WILLIAM H. STERNBERG v. STATE OF NEBRASKA.

FILED MARCH 1, 1893.    No. 5198.

1. **Street Railways:** CONTROL BY MUNICIPALITY: COMMUTA-
   TION TICKETS. The street railway of the city of Lincoln is so far under the control of the municipality that the latter may fix the rates of fare for passage over said railway, and may require tickets six for twenty-five cents to be kept for sale by each conductor of a street car.

2. ———: ———: ———. A street railway has no depots. Its stopping places are on each street corner and it transacts its business with the public in its cars, and its tickets should be kept for sale where it transacts its business with the public.

ERROR to the district court for Lancaster county. Tried below before TIBBETS, J.

*William G. Clark,* for plaintiff in error:

The ordinance requiring the street railway company to constitute its conductors agents for the sale of tickets is illegal and void. It is unreasonable and exceeds the police power of the state. The court has held a rule of a railroad company requiring passengers on freight trains to purchase tickets before entering the cars to be reasonable, and that non-compliance may be lawfully followed by expulsion, even when the offending passenger had no knowledge of the rule. (*Burlington & M. R. Co. v. Rose,* 11 Neb., 177; *Chicago & A. R. Co. v. Flagg,* 43 Ill., 364; *Arnold v. Illinois C. R. Co.,* 83 Id., 273; *Eaton v. Delaware, L. & W. R. Co.,* 15 Am. Rep., 513; *Cleveland, C. & C. R. Co. v. Bartram,* 11 O. St., 457; *Law v. Illinois C. R. Co.,* 32 Ia., 536.) A railroad company has a right to decide what grade or class of employes shall receive and handle its money. This rule is reasonable for the protection of the company against peculation and fraud. (*Cleveland, C. & C. R. Co. v. Bartram, supra.*) A carrier of passengers may require passengers to purchase tickets before entering the car or to submit to a penalty in the form of an increased toll for failure so to do. (*Chicago, B. & Q. R. Co. v. Griffin,* 68 Ill., 499; *Shelton v. Lake Shore & M. S. R. Co.,* 29 O. St., 214; *Downs v. New York & N. H. R. Co.,* 36 Conn., 287.) The spirit of modern legislation forbids discrimination in favor of a large patron, and requires of the carrier equal rates to all. The courts hold that such right exists at common law. (*Cock v. Chicago, R. I. & P. R. Co.,* 81 Ia., 561.) The powers of the city council have been prescribed at great length and with minute detail. The careful enumeration of such powers is in itself by all recognized canons of construction

a limitation thereof. The powers of a corporation, municipal or private, are limited to the privileges expressly conferred by its charter, or necessary to the enjoyment of such express privileges. (*Commonwealth v. Erie & N. E. R. Co.*, 27 Pa. St., 351; *Logan v. Pyne*, 43 Ia., 525; 2 Kyd, Corp., secs. 102-107; Willcock, Mun. Corp., 14 L L., sec. 769; Ang. & A., Priv. Corp., 111-239; 1 Dillon, Mun. Corp. [4th ed.], sec. 89.) For all purposes of jurisdiction corporations, municipal, are like inferior courts and must show the power given them in every case. If wanting, their proceedings must be holden void. (*Dunham v. City of Rochester*, 5 Cow. [N. Y.], 465; *Bloom v Xenia*, 32 O. St., 461; *State v. Atchison & N. R. Co.*, 24 Neb., 143; *Rochester v. Collins*, 12 Barb. [N. Y.], 559; *Grand Rapids v. Hughes*, 15 Mich., 54; *Horn v. People*, 26 Id., 224; *Eichels v. Evansville Street R. Co.*, 78 Ind., 261; *Huesing v. Rock Island*, 128 Ill., 465; *Brenham v. Brenham Water Co.*, 67 Tex., 542; *Spengler v. Trowbridge*, 62 Miss., 46; *Reed v. Toledo*, 18 O., 161; *Des Moines v. Gilchrist*, 67 Ia., 210; *Thomson v. Roe*, 22 How. [U. S.], 422; *Andrews v. Union Mutual Ins. Co.*, 37 Me., 256.. *Thomas v. Richmond*, 12 Wall. [U. S.], 349; *Clark v; Davenport*, 14 Ia., 494; *Merriam v. Moody*, 25 Ia., 163.)

*George H. Hastings, Attorney General*, and *Adams & Scott*, for the state:

Under a city charter giving the council power to pass all ordinances necessary for the due administration of justice and the better government thereof, and to cause the removal or abatement of any nuisance, a passage of an ordinance requiring the street car company to put a driver and a conductor on each car is a proper exercise of the police power and not an infringement of the company's rights, not being unreasonable or oppressive. (*South Covington & C. St. R. Co. v. Berry*, 18 S. W. Rep. [Ky.], 1026.) A provision in such ordinance requiring the police to cause

every car not provided with a driver and conductor to be returned to the stable is not an attempt at enforcement without trial, but merely a means of preventing a nuisance by blockading travel. (*South Covington & C. St. R. Co. v. Berry, supra.*) An ordinance enacting that it shall not be lawful for any horse railway company, without having an agent in addition to the driver to assist in controlling the car and passengers, and to prevent accident and disturbance of the company, and to maintain order and secure the safety of the passengers is a reasonable regulation, and a valid exercise of the general police power vested in a city by its charter. (*State v. Trenton*, 20 Atl. Rep. [N. J.], 1076.) The doctrine of the New York cases is, that a passenger lawfully upon a train has a right to resist any attempt to remove him therefrom; and if, in consequence of his resisting, extraordinary force is used to remove him and he is injured thereby, he may recover. (*English v. Delaware & H. Canal Co.*, 66 N. Y., 455, 23 Am. Rep., 69; *Sanford v. Eighth Ave. R. Co.*, 23 N. Y., 343, 80 Am. Dec., 286.) In California it is provided by statute that the company must furnish tickets or checks to all passengers who apply for them. (Rev. Stats. Cal., 1882, sec. 502.) In Massachusetts, statutory regulations have been enacted with reference to the removal of snow and ice. (Rev. Stats. Mass., 1882, p. 113, sec. 26.) New York has a similar provision. (Rev. Stats. N. Y., 1889, ch. 252, sec. 9.) In New York a city ordinance has been sustained which prohibited the use of sand on the tracks. (*Drydock, E. B. & B. R. Co. v. New York*, 47 Hun [N. Y.], 221; Booth, Street Railway Law, p. 336.) And an ordinance of Philadelphia was sustained as a proper police regulation which required passenger cars to be numbered and licensed on the payment of a stipulated fee. (*Frankford & P. P. R. Co. v. Philadelphia*, 58 Pa. St., 119; Booth, Street Railway Law, p. 336.) Under the powers inherent in every sovereignty, a government may regulate the conduct of its

citizens toward each other, and, when necessary for the public good, the manner in which each shall use his own property. (Booth, Street Railway Law, p. 319; *Munn v. Ill.*, 94 U. S., 113; *Chicago, B. & Q. R. Co. v. Ia.*, 94 U. S., 155; *McAunich v. Mississippi & Mo. R. Co.*, 20 Ia., 343.) After a railroad company has received authority to use the streets it is subject, not to the charter conditions alone, but also to such further police regulations as the public safety and convenience may require. (Horr & Bemis, Mun. Pol. Ord., sec. 211; *St. Louis v. St. Louis R. Co.*, 89 Mo., 44.) Corporations chartered to do business in a city are to be regarded as inhabitants of the city, and unless exempted are subjected to its ordinances. (*Frankford & P. P. R. Co. v. Philadelphia*, 58 Pa. St., 119, *supra*.) A street railway company is a common carrier of passengers, with duties and responsibilities similar to those of a railroad company. (Booth, Street Railway Law, p. 442, sec. 324.) State or municipality has a right to regulate fare charged. (*Wakefield v. South Boston R. Co.*, 117 Mass., 544; *Buffalo Eastside R. Co. v. Buffalo St. R. Co.*, 111 N. Y., 132, 139; *Blake v. Winona & St. P. R. Co.*, 19 Minn., 418; *Illinois C. R. Co. v. People*, 95 Ill., 313; *Camden & A. R. Co. v. Briggs*, 22 N. J. L., 623.) Mr. Bush was within the law, and the conductor was without the law, and when the conductor refused to give Mr. Bush the package of tickets for Bush's twenty-five cents, he violated the law of the city. So the doctrine that a passenger lawfully upon a train has a right to resist any attempt to remove him therefrom, applies. (*English v. Delaware & H. Canal Co.*, 66 N. Y., 455, 23 Am. Rep., 69; *Sanford v. Eighth Ave. R. Co.*, 23 N. Y., 343, 80 Am. Dec., 286.)

*N. Z. Snell*, also, for the state.

MAXWELL, CH. J.

The plaintiff in error was convicted of assault and battery, and judgment rendered against him on the verdict.

The case was submitted to the court below on the following stipulation of facts:

"It is hereby stipulated and agreed that the Lincoln Street Railway Company is a corporation duly organized and existing under and by virtue of the laws of the state of Nebraska, running and operating in the city of Lincoln a line of street railway, and that on the 31st day of July, 1891, William H. Sternberg was a conductor on one of the cars of said company, and on the 27th day of August, 1891, A. L. Rice was also a conductor on one of said company's cars; that on the 31st day of July, 1891, one George H. Bush got upon one of the cars of the said company, on which William H. Sternberg was conductor, and demanded of the said conductor that he sell to the said George H. Bush six Lincoln street railway tickets for twenty-five cents, and that the said George H. Bush offered to pay to the said William H. Sternberg, as conductor, the sum of twenty-five cents for said tickets, and that Mr. Bush demanded a package of six tickets for twenty-five cents, and manifested a willingness to pay one of the six tickets to the conductor whenever said tickets were delivered to him, and whenever said package of tickets were delivered to him he was ready to pay and deliver the twenty-five cents, and for that purpose held the twenty-five cents in his hand in full view, and that said Sternberg refused to give him a package of six tickets for twenty-five cents, but on the contrary demanded of said George H. Bush that he pay the five cent fare, which was the customary charge for a single passage on the car, and that the said George H. Bush refused to pay the said five cent fare on said demand, and thereupon the said Sternberg notified him that he would have to leave said car, which the said Bush declined to do, and thereupon the said William H. Sternberg attempted to forcibly eject and evict said party from said car; the said Bush resisted, and the said Sternberg was unable by himself to put said party off, and

thereupon called to his assistance other parties; that the said
Sternberg and the parties he called to his assistance took
hold of and laid their hands upon the said Bush, said Bush
all the time resisting with all his power, and the said
Sternberg and the persons helping him overcame said
Bush's resistance and forcibly ejected him from the car,
said Sternberg and his assistants using, however, no more
force than was necessary to overcome the resistance of
Bush and put him off; that on the 27th day of August,
1891, A. L. Rice was a conductor on one of the cars of the
said street railway company, and that on the said date one
Edwin P. Le Fevre got upon said car on which the said
Rice was conductor, to ride, and when he was asked for
his fare by the said conductor the said Le Fevre demanded
of the said A. L. Rice, conductor, that he sell to him six
tickets for twenty-five cents, and the said E. P. Le Fevre
was ready and willing, and tendered to the said conductor
the twenty-five cents for the tickets, and the said conductor
refused to sell said tickets to the said E. P. Le Fevre, but
demanded of him five cents, which was the customary fare
charged by the said company for a passage upon its cars,
and the said Le Fevre refused to pay the same, but in-
sisted on being sold six tickets for twenty-five cents, out of
which he would pay to the conductor his fare for said
passage; the said A. L. Rice, as conductor, still refusing
to sell said tickets and insisting upon the said Le Fevre
paying the five cent fare, which Le Fevre refused to do,
and thereupon A. L. Rice laid his hands upon the said
Le Fevre and forcibly evicted said Le Fevre from the car;
that on both of said dates there was a rule and regulation
made by said street car company by which its conductors
were required to eject and put off from its cars any person
who attempted to ride without paying the customary fare;
that on all of the cars of the Lincoln Street Railway Com-
pany the fares are paid directly to the conductors and not
dropped into the cash box, and if the conductors are re-

quired to sell tickets they would be obliged to handle the cash fares as well as those paid by tickets; that both the said E. P. Le Fevre and George H. Bush had ridden upon the said cars prior to these dates, and had attempted to buy six tickets for twenty-five cents from the conductors, and had been refused and had been notified that said conductors did not sell tickets on the cars; that prior to the putting on of the electric cars on the line of the street railway company all its lines had been operated by horse cars, and under the system as operated by horse cars there was only one man to the car, and he was the driver; and that all fares paid by the passengers on said cars were dropped into a cash box instead of being paid directly to the driver or conductor; that under said system it had been customary for several years for the driver on the horse cars to sell to passengers six tickets for twenty-five cents, as required by an ordinance of the city of Lincoln; that during the spring of '91 said system of street cars changed from horse cars to electricity, and that under said system all the fares, both cash and otherwise, are paid directly to the conductor; that under the present system of operating said street railway the various railroad ticket agents in the city sell tickets twenty-four for $1, instead of the conductor selling six for twenty-five cents to passengers; that the number of people who ride upon the cars of the Lincoln street railway per day is, upon an average, about 7,000, and about one-half of these would buy tickets of the conductors if six for twenty-five cents were sold by the conductor; that on said date there was in force an ordinance of the city of Lincoln in the words and figures following:

"1167. No company shall charge or receive more than five cents fare for each passenger carried on any of said roads, nor more than twenty-five cents for each package of six tickets.

"1168. Every street railroad company in this city shall keep for sale by the conductor or driver of each car pack-

ages of tickets of the required number for twenty-five cents each, ready for delivery during the running of the .car to any passenger applying and paying for the same.

"1170. It shall be unlawful for any person to ride upon any street railroad car in the. city of Lincoln without paying the customary fare (unless exempt by the rules of the company owning said railroad).

"1172. Any person who shall violate any of the provisions of this article shall, upon conviction thereof, be fined in any sum not exceeding $100, and be committed until such fine and prosecutions are paid."

On page 457 of the Municipal Code is an ordinance which provides as follows (referring to the Lincoln Street Railway Company): "Said railway company shall be subject to all reasonable regulations in the construction and use of said railway which may be imposed by ordinances."

On the trial of the cause the court instructed the jury as follows:

"The jury are instructed that the complaint charges that the defendant, on the 31st day of July, 1891, in the county of Lancaster and state of Nebraska and within the corporate limits of the city of Lincoln, did unlawfully in and upon one George H. Bush make an assault, and did then and there unlawfully strike and wound him, the said George H. Bush.

"2. The assault of the defendant upon the person of George H. Bush at the time and place alleged in the complaint is admitted by the defendant, and your verdict should be guilty as charged."

The jury returned a verdict finding Sternberg guilty as charged, and he was fined $5 and costs. The defense is made by the street railway company. The reasons set forth by it in its brief for holding the judgment erroneous are as follows:

"1. The ordinance requiring the street railway company to constitute its conductors agents for the sale of tickets was illegal and void.

"*a.* Because such requirement is unreasonable in law and in excess of the police power of the state.

"*b.* Because the council of the city of Lincoln was without power to enact such requirement.

"2. Because the complaining witness was himself a wrong-doer and voluntarily provoked and brought upon himself the alleged assault and was in any event rightfully ejected from said car.

"3. The ordinance is unreasonable and exceeds the police power of the state.

"4. The ordinance, which has no parallel in adjudged cases or in current history of municipal regulations, appears to have been suggested from the fact that at an early day when the cars were operated by mules or horses in charge of a single driver, the street railway company, or more exactly its predecessor, had sold tickets at the rate of six for twenty-five cents through the drivers. The drivers, however, were not permitted to take up such tickets or to collect fares, which, in each case, the passenger must personally deposit in a fare box. The driver was required to make change when necessary in a limited amount, but even then was not permitted to retain and deposit the fare. He returned the whole amount to the passenger, who dropped the fare into the box. Every one accustomed in those days to use the cars knows that this rule was rigidly enjoined and enforced, and that even for the aged or for women with children the driver was unable, on request, to receive or deposit the fare. Under rapid (electrical) transit, and with increased numbers of passengers, public safety requires, in most cases, two men instead of one to manage the cars, and public convenience demands, whether reasonable or not, that the conductor collect the fares. These great improvements render the sale of tickets by conductors unsafe and impracticable. The stipulation shows that a year ago the street railway company was carrying 7,000 passengers daily and that at least one-half would in any event pay cash. The con-

ductors then would receive $175 in cash and an equivalent of $140 in tickets. These amounts are constantly increasing, because Lincoln is a growing city and more persons use the cars each year. The opportunity for fraud and theft on the part of the conductor· is manifest. A conductor on a crowded line might receive and does receive $15 to $30 daily. For half or two-thirds of the cash taken at the rate of five cents per fare he can substitute tickets necessarily in his possession at the rate of four cents per fare, embezzling daily from fifty cents to $2—$15 to $60 per month. The ratio of tickets to fares is necessarily uncertain and variable on different lines and dates. Detection even by secret service would be impossible, because a detective to form a correct judgment would watch so closely as to disclose his purpose."

The assertion that the ordinance in question is without a parallel in the current history of municipal regulations is not borne out by the cases cited. On the contrary street railways are constructed for the convenience of the public. The cars necessarily pass over a certain prescribed portion of the streets occupied by their tracks. Every street corner is a station where passengers may be received and discharged. The streets are for the benefit of all,—the public generally as well as the portion represented by the street railway company. Now, as the company is permitted to use the public streets and along their tracks have a right of way on which it is entitled to preference over other vehicles passing along the streets, it necessarily follows that the general regulations and control of such railways are under the police powers in the city government, and the municipality may enact all reasonable rules for that purpose. (*South Covington & C. S. Ry. Co. v. Berry*, 18 S. W. Rep. [Ky.], 1026; *State v. Trenton*, 20 Atl. Rep. [N. J.], 1076; *St. Louis v. St. Louis R. Co.*, 89 Mo., 44,)

It will be observed in the case at bar that on page 457 of Municipal Code of Lincoln it is provided that "said

railway company shall be subject to all reasonable regula-
tions in the construction and use of said railway which
may be imposed by ordinances." The constitution of 1875,
to prevent favoritism and fraud, required the consent of a
majority of the electors thereof of any city, town, or in-
corporated village to the construction of a street railway.
(Const., art. XIII, sec. 2). This, therefore, was the propo-
sition submitted to the electors and accepted by them and
the street railway company. In addition to this, paragraph
16, section 67, chapter 14, of the statute of 1889 grants the
general power "to regulate and prescribe the manner of
running street cars, to require the heating and cleaning of
the same, and to fix and determine the fare charged."

It is claimed on behalf of the company that the power
"to fix and determine the fare charged" does not confer the
power to require tickets to be sold at all, and therefore that
no authority for that purpose exists in favor of the city.
This is begging the question. The power to fix the rates
of fare necessarily carries with it all incidents necessary to
carry the power into effect. Thus, for a single passage the
fare is five cents. If six trips are to be made the price is
fixed at six for twenty-five cents. A street railway has no
depots. Its stations are the street corners and its business
with the public is conducted on its cars. Is it unreason-
able to require the company to sell its tickets at its places of
doing business? We think not. The plea that it is liable
to be defrauded by its employes if it sells tickets on the
cars we believe does injustice to many faithful, reliable,
and diligent persons whose integrity is above question, and
is a mere pretext to evade the ordinance requiring tickets
to be sold on the cars, as it will readily be seen from the
stipulation of the facts that it is for the interest of the com-
pany not to sell tickets but to collect fares in cash. But
even if the claim on behalf of the company is true, which
we do not believe, it must comply with the ordinance.
The question is one of power, and the power of the city

over the street railway is full and ample, and the require-
ment is reasonable and the company must perform on its
part.    Mr. Bush therefore had a right to demand six
tickets of the plaintiff in error on offering to pay for the
same and the plaintiff in error was guilty of a wrong in
ejecting him from the cars.    The judgment is right and is

AFFIRMED.

THE other judges concur.

*William G. Clark,* for plaintiff in error.

*George H. Hastings, Attorney General, Adams & Scott,*
and *N. Z. Snell,* for the state.