CITY OF MADISON and others, Respondents, vs. MADISON GAS & ELECTRIC COMPANY and others, Appellants.

*May 14—October 9, 1906.*

*Injunction: Abuse of corporate franchises: By whom action may be brought: Public service corporations: Gas companies: Rates to be reasonable: Fixing rates: Legislative and judicial power.*

1. Acts in excess and abuse of corporate franchises and privileges, resulting in private injuries, may be restrained at the suit of private parties.
2. In the absence of legislative restriction of the rate to be charged, the grant of a franchise to conduct the business of furnishing gas·to a city and its inhabitants carries with it by implication the obligation to furnish it at a reasonable price.
3. The rates to be charged by a public service corporation may be prescribed by the legislature either directly or by delegation of the power to municipal corporations or other appropriate agencies, provided the rates so fixed are such as to afford a reasonable compensation for the service rendered.
4. Courts cannot prescribe the rates to be charged by public service corporations for future services, but may inquire and determine whether rates fixed by legislative authority are reasonable or unreasonable.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This is an appeal from an order. The action was commenced by the service of a summons. At the same time there was served an affidavit of plaintiffs' attorney, a notice, under sec. 4096, Stats. 1898, of examination of some of the defendants personally and as officers of the defendant *Madison Gas & Electric Company,* and also a *subpœna duces tecum* requiring the production by the gas company of its books and the records pertaining to its organization, indebtedness, and cost of plant, and generally as to the costs and disbursements incident to the conduct of the business. It is averred that the action is instituted to enjoin the defendant from exacting

from the plaintiff the city of *Madison* and all its customers,. for gas and electricity used by them, unreasonable and excessive rates; and to compel it to furnish such customers, in the future, gas and electricity, of good quality and at reasonable rates, without unjust discriminations. The relief sought is in no way to affect the rates at which gas and electricity are to be furnished the city during the period of the existing contract between it and the gas company.

The facts presented show that the defendant is a corporation organized under the name of the *Madison Gas & Electric Company* (for brevity it will herein be referred to as the gas company); that it is the owner of the rights and privileges granted by the legislature of this state and the common council of the city of *Madison* to conduct the business of supplying gas and electricity to the city of *Madison* and its inhabitants; that it is the only company conducting such a business within the city, and is supplying the city and its inhabitants with these commodities at rates established by it; that no rates have been prescribed under its charter or otherwise by the city or the state; and that it has placed gas pipes, posts, and electric poles and wires within and upon the public streets of the city.

The object of the examination of these parties is to enable plaintiffs to frame their complaint, and to that end discovery is sought, among other things, as to what amount has been actually paid in and invested by the gas company to acquire, build, and maintain its present plant, the amounts, time of payment and when made, in detail; the amount of bonds issued by it, when and by whom purchased, with amounts actually paid by the purchasers, and the disposition of the moneys received for bonds; the actual indebtedness of the company, when, for what, and how contracted; the disposition of moneys realized on loans; its annual operating expenses and annual gross receipts; its schedule of rates charged for the commodities it supplies to its customers; and whether

it is a member or partner of any combination or trust, and full information of such condition and relation, if it exist.

The defendant obtained an order to show cause why the proceeding before the court commissioner for such examination should not be perpetually stayed and the action dismissed. The facts and circumstances alleged by the defendant for such relief were that the plaintiff the city of *Madison* had no interest in the action; that it has agreed to indemnify the individual plaintiffs (who are the real parties in interest and who are prosecuting the action) for their costs and expenses; and that the undisputed facts and circumstances, upon which plaintiffs rely, furnish no grounds in law for the equitable relief sought to be enforced.

The motion was heard upon the affidavit, notice of examination, *subpœna duces tecum,* served and filed, and the papers and proceedings in the action. Upon a hearing the court entered an order denying the motion of defendants for a stay of any further proceedings for such examination of the parties and for dismissal of the action. This is an appeal from such order.

The cause was first argued on March 26, 1906.

For the appellants there was a brief by *Olin & Butler,* and oral argument by *H. L. Butler.* They argued, among other things, that it affirmatively appears that the plaintiff city cannot maintain the action. It is getting its light under a contract which has about three years to run, and a court of equity will not anticipate that three years hence the gas company will exact an unreasonable contract from the city. An injunction against such a remotely possible and speculative injury is unheard of. 16 Am. & Eng. Ency. of Law (2d ed.) 361. The right of the city to maintain this action, if it exists at all, must rest alone upon the fact alleged in the affidavit that inhabitants of the city who are patrons of the company are being charged an excessive rate for lighting service. These facts can give the city no right to maintain the action

except upon the theory that it is a proper municipal function to redress in the courts, at municipal expense, the individual wrongs of a certain class of citizens. This theory is condemned by authority as well as by reason. The city is not the real party in interest, because, by reason of the outstanding contract, it cannot, in its corporate entity, receive any benefit, direct or indirect. Sec. 2605, Stats. 1898; *Gross v. Heckert,* 120 Wis. 314, 320. No statute, expressly or by implication, vests in the city the right to maintain such an action; nor is the city in any sense the trustee of an express trust within the meaning of sec. 2607, Stats. 1898. 22 Ency. Pl. & Pr. 169; *Robbins v. Deverill,* 20 Wis. 142; *Boyd v. Mut. F. Asso.* 116 Wis. 155; *Janesville v. Carpenter,* 77 Wis. 288; *State ex rel. Burnham v. Cornwall,* 97 Wis. 565; *Madison v. Mayers,* 97 Wis. 399; 20 Am. & Eng. Ency. of Law (2d ed.) 1145; *Park v. Modern Woodmen,* 181 Ill. 214, 54 N. E. 932; *People ex rel. Jackson v. Suburban R. Co.* 178 Ill. 594, 49 L. R. A. 650, 656; *New Haven v. N. H. & D. R. Co.* 62 Conn. 252, 18 L. R. A. 256; *Kinne v. New Haven,* 32 Conn. 210; *Butler's App.* (Pa.) 6 Atl. 708; *Grand Rapids v. Grand Rapids H. Co.* 66 Mich. 606, 33 N. W. 749; *Coast Co. v. Spring Lake,* 58 N. J. Eq. 586, 51 L. R. A. 657, 663. The city having no right itself to maintain the action, its agreement to indemnify the individual plaintiffs for their costs and expenses in doing so was against public policy and unlawful, and, the action being prosecuted under such unlawful agreement, the right to the examination should have been denied and the action dismissed. *Miles v. Mut. R. F. L. Asso.* 108 Wis. 421, 423; *Barker v. Barker,* 14 Wis. 131; *Kelly v. Kelly,* 86 Wis. 170; *Andrews v. Thayer,* 30 Wis. 228; 5 Am. & Eng. Ency. of Law (2d ed.) 818, 829; *Allard v. Lamirande,* 29 Wis. 502; *Harrington v. Long,* 2 Myl. & K. 590. An actual interest is necessary to relieve the transaction from the taint of maintenance. *Thallhimer v. Brinckerhoff,* 3 Cow. 623, 647; *Miles v. Mut. R. F. L. Asso.* 108 Wis. 421, 433.

For the respondents there was a brief by *A. C. Hoppman,* city attorney, and *Bird, Gilman & Hobbins,* attorneys, and the cause was argued orally by *G. W. Bird.* They contended, *inter alia,* that the plaintiffs, the city as well as the individuals, all have an interest in the subject of the action and in obtaining the relief demanded, and may be joined as plaintiffs under sec. 2602, Stats. 1898, and they constitute the real parties in interest in whose name sec. 2605 requires the action to be prosecuted. The city and individual plaintiffs are all consumers of gas and electricity furnished by the defendant corporation, which enjoys a monopoly of the business in the city; and the city is one of those who will be entitled to the benefits of the action if successful. 15 Ency. Pl. & Pr. 584–587, 592, note, 594, 668; *Gross v. Heckert,* 120 Wis. 314, 320. The individual plaintiffs are resident taxpayers of the city, and as such may be joined with the city to procure reasonable rates for public lighting, although such joinder may not be necessary. *Willard v. Comstock,* 58 Wis. 565; *Fowler v. Superior,* 85 Wis. 411; *Frederick v. Douglas Co.* 96 Wis. 411; *Nevil v. Clifford,* 55 Wis. 161. To authorize joinder it is not necessary that all the plaintiffs should be affected alike, or as to the same rights; it is sufficient if they have a common right to prevent the mischief complained of. *Barnes v. Racine,* 4 Wis. 454; *Williams v. Smith,* 22 Wis. 594; *Catlin v. Wheeler,* 49 Wis. 507; *Pettibone v. Hamilton,* 40 Wis. 402; *Peck v. School Dist.* 21 Wis. 516. Even if the city were not a consumer of gas and electricity furnished by defendants, it would still have sufficient interest in the matters in controversy to enable it to maintain this action, either as sole plaintiff or joined with individual consumers. *Muncie Nat. Gas Co. v. Muncie,* 160 Ind. 97, 66 N. E. 436; *State ex rel. Bridgeton v. Bridgeton & M. T. Co.* (N. J.) 45 L. R. A. 837, 841; *Fla., C. & P. R. Co. v. State ex rel. Tavares,* 31 Fla. 482, 20 L. R. A. 419. The contract for public lighting, expiring October 1, 1908, does not deprive the city of its interest in the subject matter of the ac-

tion. and in obtaining the relief demanded. The city has the present right to be supplied with gas and electricity by defendants, (1) of good quality and sufficient quantity, (2) at the contract price until October 1, 1908, and (3) at reasonable rates after that date. Because the contract price is being accorded now does not prevent the action to secure the other measures of relief sought. · Had immediate reasonable rates for public lighting been sued for in addition to the other relief demanded, plaintiffs could have maintained the action for the latter though not entitled to the former; for it is familiar law that if the plaintiff is entitled to some relief, though not to all asked, he may maintain his action. *Hawley v. Tesch,* 72 Wis. 299; *Stronach v. Stronach,* 20 Wis. 129; *Moritz v. Splitt,* 55 Wis. 441; *Tewksbury v. Schulenberg,* 41 Wis. 584; *Plainfield v. Plainfield,* 67 Wis. 526. All the cases cited by defendants are clearly distinguishable from this case. In neither of them was there any claim or even pretense that the city would receive in its corporate capacity any benefit, or be relieved from any burden, by the relief demanded. All the benefits sought were to inure solely to private individuals, residents of the city. The undertaking of the city to pay the expense of the suit is not champertous, because the common-law doctrine as to maintenance does not apply to persons who either have an interest in the litigation or who act in the *bona fide* belief that they have. Any interest whatever, whether great or small, certain or uncertain, immediate or remote, is sufficient to exempt such persons from the charge of maintenance. 5 Am. & Eng. Ency. of Law (2d ed.) 815–820; 6 Cyc. 865, 866; *Davies v. Stowell,* 78 Wis. 334; *Gilbert-Arnold L. Co. v. O'Hare,* 93 Wis. 194; *Andrews v. Thayer,* 30 Wis. 228; *Chicago City R. Co. v. Gen. E. Co.* 74 Ill. App. 465; *Frost v. Paine,* 12 Me. 111; *Industry v. Starks,* 65 Me. 167; *Williams v. Fowle,* 132 Mass. 385; *Call v. Calef,* 13 Met. 362; *Thallhimer v. Brinckerhoff,* 3 Cow. 623; *Gilleland v. Failing,* 5 Denio, 308; *Lathrop v. Amherst*

*Bank,* 9 Met. 489; *Wickham v. Conklin,* 8 Johns. 220; *Gowen
v. Nowell,* 1 Me. 292; *Cooley v. Osborne,* 50 Iowa, 526.
Nor does it apply to parties to the suit. 5 Am. & Eng. Ency.
·of Law (2d ed.) 816–819; 6 Cyc. 851 and notes. It is
sufficient if the party honestly believes that he has an inter-
est in the question, although it may turn out that he has not.
*Findon v. Parker,* 11 Mees. & W. 675 ;· *McCall's Adm'r v.
Capehart,* 20 Ala. 521; *Vaughan v. Marable,* 64 Ala. 60; *Gil-
man v. Jones,* 87 Ala. 691; *Wickham v. Conklin,* 8 Johns.
.220.

On April 17, 1906, the court directed a re-argument on the
following questions:

1. In the absence of limitations of rates by franchise or
·contract, must gas be furnished to consumers at reasonable
rates?

2. Is it within judicial power to fix such rates for the fu-
·ture?

3. Is equity jurisdiction available for the purpose only of
·declaring an existing rate to be excessive?

4. If equity jurisdiction is so available, may it be properly
invoked on behalf of consumers generally by the city which
·granted the franchise?

The cause was re-argued on May 14, 1906.

For the appellants there was a brief by *Olin & Butler,* and
·oral argument by *H. L. Butler* and *J. M. Olin.* They con-
ceded that the authorities appear to hold that the business of
supplying light to a municipality, under a grant of the right
to use the streets for such purpose, is impressed with a public
interest, and hence that the duty arises to furnish service at
reasonable rates; yet a contrary view is taken in *Paterson
G. L. Co. v. Brady,* 27 N. J. Law, 245; *Comm. v. Lowell
G. L. Co.* 12 Allen, 75. See, in connection with these cases,
*Evans v. Boston H. Co.* 157 Mass. 37, 40; *Olmsted v. Pro-
prietors,* 47 N. J. Law, 311, 333; *Haugen v. Albina L. &
W. Co.* 21 Oreg. 411; *Portland Nat. Gas & Oil Co. v. State*

*ex rel. Keen,* 135 Ind. 54, 34 N. E. 818.   But in the absence
of express legislative authority a municipality has no power
to fix or limit rates.   *State ex rel. Wis. Tel. Co. v. Sheboygan,*
111 Wis. 23;  *Ashland v. Wheeler,* 88 Wis. 607;  *Allen v.*
*Clausen,* 114 Wis. 244;  *Lewisville Nat. Gas Co. v. State*
*ex rel. Reynolds,* 135 Ind. 49, 21 L. R. A. 734;  *St. Louis v.*
*Bell Tel. Co.* 96 Mo. 623, 2 L. R. A. 278;  *In re Pryor,* 55
Kan. 724, 29 L. R. A. 398;  *Wabaska E. Co. v. Wymore,* 60
Neb. 199, 82 N. W. 626.   No such legislative authority ex-
ists as to the city of *Madison.*   It is not within judicial power
to fix rates for the future.   The circuit court, under the con-
stitution, is purely a judicial court.   It cannot exercise legis-
lative powers.   *In re North Milwaukee,* 93 Wis. 616.   The
fixing of rates is a legislative power.   *Interstate Comm.*
*Comm. v. C., N. O. & T. P. R. Co.* 167 U. S. 479, 499.   The
limit of judicial power is to declare whether the particular
rate challenged is unreasonable, not to establish a rate for
the future.   *Reagan v. Farmers' L. & T. Co.* 154 U. S. 362,
397;  *Express Cases,* 117 U. S. 1, 29;  *Pullman's P. C. Co.*
*v. Mo. Pac. R. Co.* 115 U. S. 587, 598;  *So. Pac. Co. v. Colo.*
*F. & I. Co.* 101 Fed. 779, 785;  *Capital City Gas Co. v. Des*
*Moines,* 72 Fed. 818;  *People's G. L. & C. Co. v. Hale,* 94
Ill. App. 406;  *Nebraska Tel. Co. v. State ex rel. Yeiser,* 55
Neb. 627, 76 N. W. 171;  *Lanning v. Osborne,* 76 Fed. 319,
336;  *Steenerson v. G. N. R. Co.* 69 Minn. 353, 72 N. W.
713, 716;  *State ex rel. Board of T. v. S. C., O. & W. R. Co.*
46 Neb. 682, 31 L. R. A. 47.   Equity jurisdiction is not
available for the purpose only of declaring an existing rate
to be excessive.   The machinery of a court of equity cannot
be put in motion unless the relief obtainable in the action is
of substantial benefit to the complainants.   *Ellis v. South-*
*western L. Co.* 102 Wis. 409.   No such benefit could result
merely from a judicial declaration that an existing rate is
excessive.   It would not be *res adjudicata* of anything in a
suit brought a month later attacking the same rate as excess-

ive. *Wentworth v. Racine Co.* 99 Wis. 26, 31. A decree in general terms restraining the company from charging unreasonable rates or commanding it to furnish gas at reasonable rates would be idle and erroneous. *So. Pac. Co. v. Colo. F. & I. Co.* 101 Fed. 779, 785. The remedy at law is adequate. *Lough v. Outerbridge,* 143 N. Y. 271, 25 L. R. A. 674, 676; 4 Elliott, Railroads, § 1564, and cases cited; *Rice v. D., Y. & A. A. R. Co.* 122 Mich. 667, 48 L. R. A. 84; *Reagan v. Farmers' L. & T. Co.* 154 U. S. 362, 397; *So. Pac. Co. v. Colo. F. & I. Co.* 101 Fed. 779, 786; *Nebraska Tel. Co. v. State ex rel. Yeiser,* 55 Neb. 627, 76 N. W. 171, 173; *Shepard v. Milwaukee G. L. Co.* 6 Wis. 539; *Graham v. C., M. & St. P. R. Co.* 53 Wis. 473. Equitable jurisdiction cannot be justified on the theory that a multiplicity of suits would be prevented. The rights and interests of consumers, as between themselves and the company, are several and independent. If excessive rates are being exacted of any, the wrong is to each consumer individually. Other consumers are in no sense *necessary* parties to any action which plaintiffs may bring to vindicate their alleged rights. Other consumers certainly could rightfully refuse to join in the litigation and would not be bound by the result. *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 508. Nor are several consumers entitled to join in an action in equity to have existing rates declared excessive. *Linden L. Co. v. Milwaukee E. R. & L. Co., supra; Newcomb v. Horton,* 18 Wis. 566; *Barnes v. Beloit,* 19 Wis. 93; *Pier v. Fond du Lac Co.* 53 Wis. 421; *Gilkey v. Merrill,* 67 Wis. 459, 461. See *Nairin v. Ky. H. Co.* (Ky.) 86 S. W. 676.

For the respondents there was a brief by *John A. Aylward,* city attorney, and *Bird, Gilman & Hobbins,* attorneys, and oral argument by *Mr. G. W. Bird* and *Mr. Aylward.* They contended that, in the absence of limitation of rates by franchise or contract, gas must be furnished to consumers at reasonable rates. 14 Am. & Eng. Ency. of Law (2d ed.) 928;

Lindsley, Rate Regulation, 36; *Allnutt v. Inglis,* 12 East, 527, 538, 540; *Cincinnati, H. & D. R. Co. v. Bowling Green,* 57 Ohio St. 336, 345, 346, 49 N. E. 121, 123, 124; *Munn v. Illinois,* 94 U. S. 113; *Root v. L. I. R. Co.* 114 N. Y. 300, 4 L. R. A. 331; *McDuffee v. P. & R. R. Co.* 52 N. H. 430; *Johnson v. P. & P. R. Co.* 16 Fla. 623; *Chicago, B. & Q. R. Co. v. Iowa,* 94 U. S. 155; *Dow v. Beidelman,* 125 U. S. 680; *Ruggles v. Illinois,* 108 U. S. 526; *Avinger v. S. C. R. Co.* 29 S. C. 265. The common-law rule that corporations engaged in so-called public callings must furnish their services and supplies at reasonable rates is recognized by this court in the following cases: *Shepard v. Milwaukee G. L. Co.* 6 Wis. 539, 547; *Streeter v. C., M. & St. P. R. Co.* 44 Wis. 383; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425, 588. It is within judicial power to fix reasonable rates for the future. In this case the court is not called upon necessarily to go to the extent of fixing reasonable rates for the future, but may stop short of that and simply declare present rates unreasonable and enjoin their exaction for the future. But while this is so, the second question for re-argument should be answered in the affirmative, both upon reason and authority. It is within judicial power to determine whether a given rate is reasonable, and if found to be unreasonable to enjoin its exaction or enforcement in the future; and this includes the power to establish the maximum of such rates for the future. *Munn v. Illinois,* 94 U. S. 113; *Chicago, B. & Q. R. Co. v. Iowa,* 94 U. S. 155; *Chicago, M. & St. P. R. Co. v. Minnesota,* 134 U. S. 418; *San Diego L. & T. Co. v. National City,* 174 U. S. 739; *Spring Valley W. W. v. San Francisco,* 82 Cal. 286; *Reagan v. Farmers' L. & T. Co.* 154 U. S. 362; *St. Louis & S. F. R. Co. v. Gill,* 156 U. S. 649; *Smyth v. Ames,* 169 U: S. 466; *Chicago & G. T. R. Co. v. Wellman,* 143 U. S. 339; *Peoria G. & E. Co. v. Peoria,* 200 U. S. 48; *Cincinnati, H. & D. R. Co. v. Bowling Green,* 57 Ohio St. 336, 49 N. E. 121; *New Memphis G. & L. Co. v. Memphis,*

72 Fed. 952. Equitable jurisdiction is available for the purpose only of declaring an existing rate excessive. The power to declare an existing rate excessive is of the same nature as the power to declare an existing rate unreasonably low. In the exercise of each the main question is, What is a reasonable rate? That being settled, the given rate is excessive if it exceeds that rate, and unreasonably low if it falls below it. All the cases before cited agree that, if the given rate is unreasonably low, equity jurisdiction is available to have it so declared at the suit of the corporation; and there seems to be no just reason why the courts should not be equally open to the people for like redress where the given rate fixed by the company is excessive. *Cincinnati, H. & D. R. Co. v. Bowling Green,* 57 Ohio St. 336, 49 N. E. 121, 123; *Chicago, B. & Q. R. Co. v. Iowa,* 94 U. S. 155; *Dow v. Beidelman,* 125 U. S. 680; *Reagan v. Farmers' L. & T. Co.* 154 U. S. 362; *Smyth v. Ames,* 169 U. S. 466; *New Memphis G. L. Co. v. Memphis,* 72 Fed. 952; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *Portland Nat. Gas & Oil Co. v. State ex rel. Keen,* 135 Ind. 54, 34 N. E. 818; *Greenfield Gas Co. v. Trees,* 165 Ind. 209, 75 N. E. 2; *Coy v. Indianapolis Gas Co.* 146 Ind. 655, 46 N. E. 17; *State ex rel. Snyder v. Portland Gas & Oil Co.* 153 Ind. 483, 53 N. E. 1089; *Gibbs v. Con. Gas Co.* 130 U. S. 396; *Gas Light Co. v. Zanesville,* 47 Ohio St. 35, 23 N. E. 60; *Zanesville v. Gas Light Co.* 47 Ohio St. 1, 23. N. E. 55; *Tacoma H. Co. v. Tacoma L. & W. Co.* 3 Wash. 316, 28 Pac. 516; *Louisville Gas Co. v. Dulaney,* 100 Ky. 405; *Baily v. Fayette G. F. Co.* 193 Pa. St. 175; *People's G. L. & C. Co. v. Hale,* 94 Ill. App. 406. Equity jurisdiction may be properly invoked on behalf of consumers generally by the city which granted the franchise. *Muncie Nat. Gas Co. v. Muncie,* 160 Ind. 97, 66 N. E. 436; *Gas Light Co. v. Zanesville,* 47 Ohio St. 35, 23 N. E. 60; *State ex rel. Bridgeton v. Bridgeton & M. T. Co.* (N. J.) 45 L. R. A. 837; *Fla., C. & P. R. Co. v. State ex rel. Tavares,* 31 Fla. 482, 20 L. R. A.

419; *Watertown v. Cowen,* 5 Paige, 510; *Williams v. Smith,* 22 Wis. 594; *State ex rel. Wilbur v. Trenton P. R. Co.* 57 N. J. Law, 212; *Greenfield Gas Co. v. Trees,* 165 Ind. 209, 75 N. E. 2. The doctrine that municipalities may maintain actions to restrain unlawful interference with its streets, recognized and enforced by this court, is sufficient to enable the city to maintain this action, even if it were not a consumer of gas and electricity. *Pewaukee v. Savage,* 103 Wis. 271; *Neshkoro v. Nest,* 85 Wis. 126; *Waukesha H. M. Co. v. Waukesha,* 83 Wis. 475; *Oshkosh v. M. & L. W. R. Co.* 74 Wis. 534; *Jamestown v. C., B. & N. R. Co.* 69 Wis. 648.

The following opinion was filed June 21, 1906:

SIEBECKER, J.   The nature and the purpose of this action must be determined from the facts shown in the affidavit filed, under sec. 4096, Stats. 1898, in the proceeding for the examination of the parties before trial. This examination is demanded for the purpose of enabling plaintiffs to frame their complaint. The affidavit states the general nature and objects of the action as well as the points upon which discovery is desired. It appears that the action is planted in equity, and is one seeking to enjoin the gas company and its officers and agents from demanding or exacting from its customers unreasonable and excessive rates for gas to be furnished to them, and to compel it to furnish a good quality and a sufficient quantity of its commodities at reasonable rates, without unjust discrimination, and to establish a uniform schedule of prices for them. There is no dispute as to the nature of the business conducted by the gas company, and there is no dispute but that it has acquired rights and privileges to conduct the business of furnishing gas and electricity to the city of *Madison* and its inhabitants, and that it may, for this purpose, occupy the streets and alleys of the city with pipes and poles, electric wires, and such other appliances as

are appropriate and necessary for the maintenance and conduct of its enterprise.

From the nature and object of the action and the relief demanded it is obvious that plaintiffs are prosecuting it as one in equity to restrain the gas company from continuing to furnish these commodities to its customers at the prices it has charged and is now charging for them, upon the ground that such charges are unreasonably high and are unauthorized by the franchise it exercises, and result in an excess and abuse of the rights and privileges granted it, under which it devoted its property to a use in which the public have an interest.

The right to relief by injunction, to restrain acts in excess and abuse of corporate franchises and privileges, is recognized in the law and has been enforced by the courts of this state in appropriate cases. The presentation of the grounds of this jurisdiction contained in the opinion in *Att'y Gen. v. Railroad Cos.* 35 Wis. 425, is so complete and sufficient that nothing additional can now be said on the subject. The remedy was therein applied in an action by the attorney general, acting for the state, to restrain the railroad companies from exacting tolls for the carriage of passengers and freight in excess of the maximum rates established by acts of the legislature. It is there stated:

"The equitable jurisdiction precludes the objection that there is an adequate remedy at law. It admits the remedy at law, but administers its own remedy in preference, when the state seeks it in preference. It seems to proceed on the presumption that it may better serve the public interest to restrain a corporation, than to punish it by penal remedies or to forfeit its charter, and that, in that view, the proper officers of the state should have an election of remedies." Page 524.

The following cases are cited in addition to those cited by the court in its opinion: *Comm. v. P. & C. R. Co.* 24 Pa. St. 159; *Att'y Gen. v. Jamaica Pond A. Corp.* 133 Mass. 361; *Stockton v. Cent. R. Co.* 50 N. J. Eq. 52, 24 Atl. 964; 5 Pom.

Eq. Jur. (Eq. Rem.) § 302, and cases cited in notes. The court also asserts that "the custom of courts of equity to interfere in such cases, at the suit of private parties, for private injuries, is quite old," and that "it seems to have grown up out of the ancient jurisdiction to restrain waste and nuisance," and declares that the jurisdiction in favor of both the public and private persons is well established, "one on behalf of the state, for public wrong, and the other on behalf of private persons, for private wrong, arising from an excess or abuse of corporate franchises." 35 Wis. 528, 529. The equitable jurisdiction "of private suits to restrain private wrongs arising from" such excess or abuse of corporate powers, which was then recognized as firmly established by both the English and American cases, has been so extensively applied that it cannot now be regarded as open to question.

Among specific applications of the jurisdiction to cases pertaining to acts of corporations engaged in the business of furnishing gas and electricity to a city and its inhabitants are the following: *Gas Light Co. v. Zanesville,* 47 Ohio St. 35, 23 N. E. 60. This was an action by the city, in its proprietary capacity, to enforce its right to have gas furnished by the gas company in compliance with the terms of an ordinance prescribing fixed rates. The case of *Muncie Nat. Gas Co. v. Muncie,* 160 Ind. 97, 66 N. E. 436, was an action in equity by the city against the gas company to enforce obedience to an ordinance prescribing the rates and the conditions upon which gas was to be furnished to the inhabitants of the city. In *Louisville Gas Co. v. Dulaney,* 100 Ky. 405, 38 S. W. 703, equitable relief by injunction was awarded to prevent a threatened violation of franchise obligations by way of overcharges for gas. Among other cases wherein equity has exercised jurisdiction in similar cases to restrain corporations from committing acts, resulting in private injury, in excess or violation of franchise rights and obligations, are the following: *Seattle G. & E. Co. v. Citizens' L. & P. Co.* 123 Fed.

588; *People's Gas Co. v. Tyner,* 131 Ind. 277, 31 N. E. 59; *Hudson River Tel. Co. v. Watervliet T. & R. Co.* 135 N. Y. 393, 32 N. E. 148; *Pennsylvania R. Co.'s App.* 115 Pa. St. 514, 5 Atl. 872; *Shamokin v. Shamokin & Mt. C. E. R. Co.* 196 Pa. St. 166, 46 Atl. 382; *Ernst v. New Orleans W. W. Co.* 39 La. Ann. 550, 2 South. 415; 5 Pom. Eq. Jur. (Eq. Rem.) §§ 301–304; *Coast Co. v. Spring Lake,* 58 N. J. Eq. 586, 47 Atl. 1131, 51 L. R. A. 657, and note; *Bienville W. S. Co. v. Mobile,* 112 Ala. 260, 20 South. 742; *Indianapolis Cable St. R. Co. v. Citizens' St. R. Co.* 127 Ind. 369, 24 N. E. 1054, 26 N. E. 893; *Sickles v. Manhattan G. Co.* 64 How. Pr. 33. In the following cases this equitable remedy was employed by the courts of this state upon analogous grounds: *Jamestown v. C., B. & N. R. Co.* 69 Wis. 648, 34 N. W. 728; *Oshkosh v. M. & L. W. R. Co.* 74 Wis. 534, 43 N. W. 489.

The defendants aver that it is not within the power of the court to remedy the wrongs complained of through its equitable jurisdiction, and therefore ask for the dismissal of the case. As before stated, plaintiffs seek preventive relief against acts of the gas company, alleged to constitute an excess and abuse of the privileges and franchises granted for conducting its business of furnishing gas and electricity to the city of *Madison* and its inhabitants. The business of supplying gas and electricity to meet the demands of the inhabitants of a community, under grant of the state or of a municipal corporation, is of a public nature. It is, in character, a public business and like that of common carriers, warehousemen, and other enterprises in which the community has an interest different from what it has in private enterprises devoted to manufacturing and merchandising the common articles of trade. This view was expressed by this court in the early case of *Shepard v. Milwaukee G. L. Co.* 6 Wis. 539, which is well supported by the decisions of various courts. *Gibbs v. Consolidated Gas Co.* 130 U. S. 396, 9 Sup. Ct. 553; *New Or-*

*leans Gas Co. v. Louisiana L. Co.* 115 U. S. 650, 6 Sup. Ct.
252. In *Louisville Gas Co. v. Citizens' Gas Co.* 115 U. S.
683, 6 Sup. Ct. 265, it is said:

"Such a business is not like that of an ordinary corporation
engaged in the manufacture of articles that may be quite as
indispensable to some persons as are gas lights.   The former
articles may be supplied by individual effort, and with their
supply the government has no such concern that it can grant
an exclusive right to engage in their manufacture and sale.
But as the distribution of gas in thickly populated districts
is, for the reasons stated in the other case, a matter of which
the public may assume control, services rendered in supplying
it for public and private use constitute, in our opinion, such
public services as, under the constitution of Kentucky, au-
thorized the legislature to grant to the defendant the exclusive
privilege in question." *St. Louis v. St. Louis G. Co.* 70 Mo.
69; *Chicago G. & C. Co. v. People's G. & C. Co.* 121 Ill. 530,
13 N. E. 169; 20 Cyc., GAS, 1154 *et seq.*

The right to regulate these enterprises and the property
employed in them rests upon grounds which are exhaustively
examined and fully elaborated in *Munn v. Illinois,* 94 U. S.
113, and the views therein expressed have been accepted by
the courts of this country whenever they have been called
upon to pass on the question.   It is there stated that, when
we look to the common law for the right of the state to regu-
late these public undertakings, it is found

"that, when private property is affected with a public inter-
est, it ceases to be *juris privati* only."   "Property does be-
come clothed with a public interest when used in a manner
to make it of public consequence and affect the community at
large.   When, therefore, one devotes his property to a use in
which the public has an interest, he, in effect, grants to the
public an interest in that use, and must submit to be con-
trolled by the public for the common good, to the extent of
the interest he has thus created.   He may withdraw his grant
by discontinuing the use; but, as long as he maintains the
use, he must submit to the control."

*Att'y Gen. v. Railroad Cos.* 35 Wis. 425.

The right to conduct such a business under grant from a municipality in no way affects its character, and such a grant is deemed to be one from the state through one of its municipal agencies. *New Orleans v. Clark,* 95 U. S. 644, and cases cited; *Hamilton G. & C. Co. v. Hamilton,* 146 U. S. 258, 13 Sup. Ct. 90; *Wright v. Nagle,* 101 U. S. 791.

One of the conditions for the exercise of the privilege of conducting a gas business, under legislative grant, is that, in the absence of legislative prescription restricting the rate of compensation for the service furnished, the grant carries by implication the obligation to furnish it at a reasonable price. Such obligation is implied by law and is incurred by acceptance of the franchise and privilege. This is the declared rule of law as established by the adjudications. See the following cases in support of the rule: *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *Shepard v. Milwaukee G. L. Co.* 6 Wis. 539; *Capital City G. Co. v. Des Moines,* 72 Fed. 829; *Spring Valley W. W. v. Schottler,* 110 U. S. 347, 4 Sup. Ct. 48; *Dow v. Beidelman,* 125 U. S. 680, 8 Sup. Ct. 1028; *Chicago, M. & St. P. R. Co. v. Minnesota,* 134 U. S. 418, 10 Sup. Ct. 462; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418; *Cotting v. Kansas City S. Y. Co.* 183 U. S. 79, 22 Sup. Ct. 30; *Lumbard v. Stearns,* 4 Cush. 60; *People v. Budd,* 117 N. Y. 1, 22 N. E. 670, 682; *Clark v. State,* 142 N. Y. 101, 36 N. E. 817. Within this principle, so established, rests the right of the state to prescribe the charge to be made for a public service, if, under the facts and circumstances, it be a sum sufficient to afford a reasonable compensation.

This power of the state is in its nature legislative, and has always been exercised either directly by the legislative branch of the government or by delegation of it to municipal corporations or some other appropriate agency. Whether existing or prescribed rates and charges for a public service afford a reasonable compensation is a judicial question. In the very nature of the right to regulate these matters between the pub-

lic and those engaged in performing the service, it must fol-
low that courts cannot prescribe a schedule of rates and
charges as the prescribed *quantum* of compensation which is
to be awarded for future services, because it is the legisla-
tive prerogative to make and prescribe the rules which shall
regulate the relations between persons and their acts as they
arise in the affairs of life. When, however, such rules have
been enacted as law, then the judiciary is vested with the
authority to construe and apply them to the affairs they were
intended to regulate and control. These two functions are
recognized as distinct and separate in the fundamental organ-
ization of our government, and the prerogatives and powers
of the one department of government are not to be encroached
upon or curtailed by the other. In *Reagan v. Farmers' L. &
T. Co.* 154 U. S. 362, 14 Sup. Ct. 1047, the court, in speak-
ing of the power to fix the compensation for a public service,
says:

"The courts are not authorized to revise or change the body
of rates imposed by a legislature or a commission. They do
not determine whether one rate is preferable to another, or
what under all the circumstances would be fair and reason-
able as between the carrier and the shipper. They do not
engage in any mere administrative work. But still there can
be no doubt of their power and duty to inquire whether a
body of rates prescribed by a legislature or a commission is
unjust and unreasonable and such as to work a practical de-
struction to rights of property, and, if found so to be, to re-
strain its operation."

In the *Express Cases,* 117 U. S. 1, 6 Sup. Ct. 542, where-
in the trial court had fixed and regulated the terms and pre-
scribed what it deemed reasonable charges upon which the
railroad and express companies should do their public busi-
ness, it was held:

"In this way, as it seems to us, 'the court has made an ar-
rangement for the business intercourse of these companies
such as, in its opinion, they ought to have made for them-
selves.' The regulation of matters of this kind is legislative
in its character, not judicial."

And in *Atchison, T. & S. F. R. Co. v. D. & N. O. R. Co.*. 110 U. S. 667, 682, 4 Sup. Ct. 192, it is observed:

"A court of chancery is not, any more than is a court of law, clothed with legislative power. It may enforce, in its own appropriate way, the specific performance of an existing legal obligation arising out of contract, law, or usage, but it cannot create the obligation."

These and other cases serve to define the limits of the judicial power in dealing with the subject of enforcing the obligation as to reasonable compensation for the performance of a public service like those involved in this action. The decisions upon the subject make it obvious that the power to prescribe what the charges shall be for services rendered in the conduct of a business impressed with a public interest is vested in the legislature, and must be exercised by it directly or through some appropriate agency. *Winchester & L. T. R. Co. v. Croxton,* 98 Ky. 739, 34 S. W. 518, 33 L. R. A. 177, and cases cited in editor's note; *Ruggles v. People,* 91 Ill. 256; *Sternberg v. State,* 36 Neb. 307, 54 N. W. 553; *Olmsted v. Proprietors,* 47 N. J. Law, 311; *Cincinnati, H. & D. R. Co. v. Bowling Green,* 57 Ohio St. 336, 49 N. E. 121; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418; *Nebraska Tel. Co. v. State,* 55 Neb. 627, 76 N. W. 171; *W. U. Tel. Co. v. Myatt,* 98 Fed. 335; *So. Pac. Co. v. Colo. F. & I. Co.* 101 Fed. 779, 42 C. C. A. 12. The validity of such legislation may become a question of judicial inquiry if it fails to provide reasonable compensation for the use of the property devoted to such public purpose. If rates are prescribed which are too low to compensate for the service rendered, an enforcement of them would result in taking property employed in the business for a public use without just compensation. The propriety of such legislation must be judicially determined under the constitutional guarantees that "the property of no person shall be taken for public use without just compensation" and that no one shall be deprived of his property without due process of law. *Stone v. Farmers' L. & T. Co.* 116

U. S. 307, 6 Sup. Ct. 334, 388, 1191; *Chicago, M. & St. P. R. Co. v. Minnesota,* 134 U. S. 418, 10 Sup. Ct. 462, and other cases cited therein.

But it is insisted by respondents that, since the gas company is obligated to furnish gas to the city and its inhabitants at a reasonable price, the court has jurisdiction to determine what, under the existing facts and circumstances, is a reasonable charge, and to enforce it as the measure of future service under like conditions. No doubt the court can ascertain, within its judicial function and whenever the question is necessarily involved in any controversy to which the gas company is a party, what is a reasonable charge for gas furnished. This, however, as already shown, is the extent to which the court can go. Whatever might be determined to be a reasonable charge, under the facts and circumstances adduced in such an inquiry, cannot be enforced as a fixed charge for the service for any purpose other than to determine the particular controversy between the parties and their privies. If it were attempted to enforce it as a prescribed future charge, it would, in an indirect way, usurp the legislative prerogative of prescribing by rule the compensation for a future public service. This, as we have seen, the courts cannot do.

This question arose directly in the case of the *Interstate Comm. Comm. v. C., N. O. & T. P. R. Co.* 167 U. S. 479, 499, 17 Sup. Ct. 900, wherein the commission had determined what were reasonable rates for transportation charges upon railroads between certain fixed points, and had applied to the court for their future enforcement. It is there observed: "It is one thing to inquire whether the rates which have been charged and collected are reasonable—that is a judicial act; but an entirely different thing to prescribe rates which shall be charged in the future—that is a legislative act;" and the court cites cases in support of the doctrine, and concludes (167 U. S. 511, 17 Sup. Ct. 905) that, since Congress had not conferred the legislative power of prescribing

rates on the commission, "it did not intend to secure the same result indirectly by empowering that tribunal to determine what in reference to the past was reasonable and just, . . . and then enable it to obtain from the courts a peremptory order that in the future the railroad companies should follow the rates thus determined to have been in the past reasonable and just."

These principles are applicable to the case before us, and must be held to rule it. Nothing has been done by the state, either directly, or indirectly through the city of *Madison* as one of its agencies, to prescribe a rate at which the gas company is to furnish gas to the city and its inhabitants. True, the gas company is obligated to furnish the commodity at a reasonable rate, but no power exists in the court to prescribe as a fixed charge for such service in the future what it may find to have been a reasonable rate for the service theretofore furnished. The relief demanded, compelling the gas company to furnish gas to its customers at a reasonable rate in the future, must be secured, either directly or through an appropriate agency, by legislative action, prescribing rates or charges which shall be reasonable for the service. We discover no other object in this action, nor do the facts presented, upon which equitable relief is sought, afford any basis for any other equitable relief to remedy the wrongs complained of. Upon these considerations it must follow that the court erred in denying defendants' motion for dismissal of the action.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions that the court enter an order dismissing the action and granting costs to the defendants.

A motion for a rehearing was denied October 9, 1906.