SOUTHERN PAC. CO. v. COLORADO FUEL & IRON CO. et al.

COLORADO FUEL & IRON CO. v. SOUTHERN PAC. CO. et al.

(Circuit Court of Appeals, Eighth Circuit.   April 16, 1900.)

Nos. 1241, 1242.

1. CARRIERS—REGULATION OF CHARGES—RATES ON INTERSTATE COMMERCE.
Under the decisions of the supreme court, which have conclusively determined that the interstate commerce commission has no power to fix rates for the carriage of interstate freight, a decree of a court for the enforcement of a rate so fixed by the commission is without authority; nor has the court itself the power to determine in advance what is a reasonable rate, and to enjoin the future observance of such rate, such power being legislative, and not judicial, in its character.

2. SAME—POWERS OF INTERSTATE COMMERCE COMMISSION—FIXING RATES.
Certain interstate carriers having established and for some time maintained a rate on steel rails and fastenings and other iron products from Chicago, Ill., to San Francisco, Cal., and other Pacific Coast points, the interstate commerce commission ordered that the rates on such products from Pueblo, Colo., an intermediate point, to such Pacific Coast points, should not exceed 75 per cent. of the rates contemporaneously in force from Chicago to the same points on the Pacific Coast, and that the rate on steel rails and fastenings from Pueblo to San Francisco should not exceed 45 cents per hundred, and that the rate on other iron products should not exceed 37½ cents per hundred.   *Held*: (1) That the commission had no more power to fix a rate from Pueblo to Pacific Coast points by relation to the Chicago rate that had been or that might be established by the carriers themselves than it had to prescribe a maximum rate from Pueblo to Pacific Coast points upon an independent consideration of what would be a reasonable charge for the service, and that its order was therefore void; (2) that the circuit court of the United States had no power to make such an order as was made by the interstate commerce commission, based on the Chicago rate, since such action was tantamount to an exercise of the legislative power to prescribe rates, which does not belong to the courts.

3. INJUNCTION—INTERSTATE COMMERCE ACT.
A restraining order that neither forbids nor commands the doing of any specific act, but simply repeats the general admonitions of the interstate commerce act, should not be granted, since such an injunction does not give any additional sanction to the statute, but leaves all vital questions concerning violations of the law to be tried by proceedings for contempt, instead of being tried in the usual manner before a court and jury.

4. RELIEF BY INJUNCTION—EXCESSIVE RATES.
It is not within the legitimate province of a court of equity, in a controversy between interstate carriers and shippers, to interpose and fix a maximum freight rate, either upon an independent consideration of what is a reasonable charge or by relation to some other rate then or theretofore in force, and thereupon enjoin the carrier from demanding more than the rate so established, inasmuch as such an order effectually deprives an

interstate carrier of the right to fix its rate in the first instance, and to change the same, which power, as it seems, is conceded to the carrier by the interstate commerce act.

Appeal from the Circuit Court of the United States for the District of Colorado.

On October 28, 1898, the Colorado Fuel & Iron Company, a corporation of the state of Colorado, exhibited its bill of complaint in the circuit court of the United States for the district of Colorado against the Southern Pacific Company, a corporation of the state of Kentucky, and against numerous other railroad companies which did business in connection with it, for the purpose of preventing said railroad companies from putting in force freight rates on merchandise shipped from Pueblo, in the state of Colorado, to San Francisco and other points on the Pacific Coast, which were alleged to be extortionate and unreasonable. Relief was prayed on two grounds, and the bill consisted of two parts or counts. In the first count it was averred, in substance, that on February 18, 1895, the Colorado Fuel & Iron Company, the complainant below, was engaged at Pueblo, in the state of Colorado, in the manufacture and sale of steel rails and fastenings and other steel and iron products, but had been unable before that date to market its product at points on the Pacific Coast because the rate charged for transportation was unreasonable, the same being $1.60 per hundred pounds; that complaint was made by it to the interstate commerce commission of the excessive rate charged as aforesaid between Pueblo and Pacific Coast points; that a hearing was had before said commission with respect to the matters complained of, which hearing resulted on November 25, 1895, in a decision by the commission that any rate on iron or steel products between Pueblo, Colo., and San Francisco, Cal., which was greater at any time than 75 per cent. of the rates contemporaneously in force on like traffic from Chicago to San Francisco, was unreasonable, and in violation of the interstate commerce act, and in an order by said commission to the effect that the defendants should put in force from Pueblo to San Francisco a rate not exceeding 45 cents per hundred on steel rails and fastenings, and 37½ cents per hundred on bar iron, cast iron, water pipe, billets, blooms, rivets, nails, and spikes, and that the rate from Pueblo to San Francisco on such iron and steel articles should never at any time be greater than 75 per cent. of the rates contemporaneously in force on like traffic from Chicago to San Francisco; that at the time said decision and order were promulgated by the commission the rate per hundred pounds from Chicago to San Francisco in car-load lots was 60 cents per hundred on steel rails and fastenings, and 50 cents on other steel and iron products; and that by said decision and order the rates from Pueblo to San Francisco were respectively made on the species of traffic aforesaid 45 cents and 37½ cents per hundred pounds. It was averred that on March 30, 1896, the interstate commerce commission filed a bill to compel the Southern Pacific Company and other defendants to comply with its aforesaid order, they having at first refused to do so; that during the pendency of said cause the rate prescribed by the aforesaid order of the interstate commerce commission was put in force, and had ever since been maintained, but that on October 17, 1898, the Southern Pacific Company had given notice that from and after November 7, 1898, the rate per hundred pounds on steel rails and fastenings from Pueblo to San Francisco would be advanced to 60 cents per hundred, and on other steel and iron products to 75 cents per hundred; and that the rates so proposed to be put in force were unreasonable and unjust, and would constitute an unlawful discrimination against the complainant, and in favor of all manufacturers of iron products east of Pueblo, and would exclude the complainant from the Pacific Coast market, and cause it great and irreparable loss and damage. In the second part of its bill all of the allegations of the first count were reaffirmed, and in addition thereto the following facts were averred: That from October 22, 1892, to June 2, 1896, the defendants had exacted a rate on iron products from Pueblo to San Francisco and other Pacific Coast points in the sum of $1.60 per hundred, the distance being substantially 1,500 miles, while at the same time they only charged a rate of 60 cents per hundred on steel rails and fastenings, and 50 cents per hundred on other steel and iron products, from the city of Chicago to the same

Pacific Coast points, the distance being substantially 2,500 miles, the conditions of transportation substantially the same, and the shorter route being included in the longer and a part thereof; that by so doing the defendants had charged complainant more than they charged other persons for a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar conditions and circumstances, and had given an undue and unreasonable preference and advantage to particular persons, corporations, and localities, and had subjected the complainant and the city of Pueblo and its traffic to an undue and unreasonable prejudice and disadvantage, and had also charged a greater compensation in the aggregate for the transportation of a like kind of property under similar circumstances and conditions for a shorter than for a longer distance over the same line in the same direction, the shorter being included within the longer haul, and had violated the interstate commerce act; that by reason of said wrongful acts the petitioner, who was the owner of large and productive iron and coal mines, and an extensive plant for making steel and iron products, had been compelled to restrict its manufacture thereof greatly below its capacity, and had been in effect excluded from Pacific Coast markets; that as to all Pacific Coast points except San Francisco the defendants had charged a rate of $1.60 per hundred pounds from Pueblo since October 22, 1892; that on June 2, 1896, the defendants had put in force a tariff of 45 cents per hundred pounds on steel rails and fastenings, and of 37½ cents per hundred pounds on other steel and iron products, between Pueblo and San Francisco, the same being three-fourths of the rate from Chicago to San Francisco, and had ever since maintained the last-mentioned rate, to wit, three-fourths of the Chicago rate, as between Pueblo and San Francisco, the result being that the petitioner had been enabled to market its products on the Pacific Slope; and that the Southern Pacific Company was the owner of lines of railroads which enabled it to control the entrance of all the other defendant railroad companies into the city of San Francisco, and to dictate to the other defendants named in the bill the rates to be charged, and the divisions thereof, as respects Pacific Coast traffic. It was finally averred, as in the first count, that the Southern Pacific Company on October 17, 1898, had given notice of a proposed increase in rates, as heretofore stated, on iron and steel products, the same to become effective on November 7, 1898; "that in so advancing said rates said defendants will and are proposing and intending to make, as against this petitioner, an unjust and unreasonable charge, and will charge and demand a greater compensation for service to be rendered petitioner than they charge and receive from other persons for a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, and give an undue and unreasonable preference and advantage to particular persons, corporations, and localities in Chicago and elsewhere east of said city, and their traffic, and subject petitioner and its traffic to undue and unreasonable prejudice and disadvantage and unjust discrimination, and will prevent the petitioner from having its interstate traffic moved by said defendants upon terms and conditions as favorable as those given by them for like traffic under similar conditions to other shippers, all in violation of said [interstate commerce] act." In view of the premises, the petitioner prayed for a mandatory injunction commanding the defendants to transport the petitioner's steel and iron products from Pueblo to San Francisco at the then existing rates, to wit, 45 cents per hundred pounds on steel rails and fastenings, and 37½ cents on other steel and iron products, and restraining them from canceling or advancing such rates until further order, and that the petitioner be awarded a judgment against the defendants for the sum of $100,000 for the damages theretofore sustained. A demurrer to the bill was interposed by the Southern Pacific Company, which was overruled on November 4, 1896. No answers having been filed, a decree pro confesso was subsequently entered. Subsequent proceedings were taken before a master to ascertain the amount of the complainant's damages, and after the master had filed his report recommending a decree for damages in the sum of $35,300 the case came before the court for final hearing and decree. The court rejected the complainant's demand for damages, but awarded an injunction to the following effect: First, that the defendants be enjoined and restrained from further continuing to violate and

disobey the interstate commerce act, and particularly to abstain from violating the order of the interstate commerce commission of November 25, 1895, the substance of which order has been heretofore stated; second, that the defendants be enjoined and required, in respect of complainant's traffic from Pueblo to San Francisco, Sacramento, Stockton, San Jose, Marysville, or Oakland, in the state of California, to cease and desist, on and after March 25, 1899, from unjust and unreasonable charges, or from demanding a greater compensation for service to be rendered complainant than they charge other persons for a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, or from giving undue and unreasonable preference and advantage to particular persons, corporations, and localities at Chicago, Ill., and elsewhere eastward of said city, or from subjecting the complainant and its traffic to undue and unreasonable prejudice and disadvantage and unjust discrimination, or from preventing the complainant from having its interstate traffic moved upon terms and conditions as favorable as those given by them for like traffic under similar conditions to other shippers; and, third, that the defendants be required and commanded to move the interstate traffic of the complainant, on and after March 25, 1899, at the same rates charged and upon terms as favorable as those given by the defendants, under similar conditions, to any other shipper, to the end that they charge and demand from said complainant for transportation from Pueblo to San Francisco, Sacramento, Stockton, San Jose, Marysville, and Oakland, or from Pueblo to either of said points, on steel rails and railway fastenings, no more than 45 cents per hundred pounds, and on bar iron, cast iron, water pipe, pig iron, billets, blooms, rivets, or spikes no more than 37½ cents per hundred pounds. From the final decree so made the Southern Pacific Company prosecuted an appeal, and assigns error as respects the injunction. The complainant below also appealed, and assigns error as respects the disallowance of the damages assessed by the master.

Joel F. Vaile (Edward O. Wolcott, on the brief), for Southern Pac. Co.

David C. Beaman (Fred. Herrington, on the brief), for Colorado Fuel & Iron Co.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first paragraph of the restraining order which is quoted above in the statement, namely, that part of the order which requires the defendant company to comply with the order of the interstate commerce commission of date November 25, 1895, and in obedience thereto to transport steel and iron products from Pueblo, Colo., to San Francisco, Cal., for 45 cents and 37½ cents per hundredweight, and in no event to charge more than 75 per cent. of the rate on similar products between Chicago and San Francisco, cannot be upheld consistently with the decisions of the supreme court of the United States in at least three cases, namely: Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243; Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184, 196, 16 Sup. Ct. 700, 40 L. Ed. 935; and Interstate Commerce Commission v. Alabama M. Ry. Co., 168 U. S. 144, 161, 18 Sup. Ct. 45, 42 L. Ed. 414. These decisions conclusively establish the proposition that the order of the interstate commerce commission which the defendant company was enjoined to obey was a void order, because the commission undertook to prescribe a maximum rate between Pueblo, Colo., and San Francisco, Cal., which it

had no power under the interstate commerce act to prescribe directly, or indirectly by determining with reference to the past what was a reasonable rate and thereupon declaring that the rate should not be raised above that which it had adjudged to be reasonable. The order of the commission having been made without authority, it follows that so much of the restraining order is erroneous as seeks to put that order in force.

The third clause of the restraining order, which is quoted above in substance, in our judgment is also erroneous. In this paragraph of the restraining order the lower court, acting, no doubt, upon the allegations contained in the second part of the bill, which were admitted by the demurrer, undertook to do that which the interstate commerce commission had previously done; that is to say, prescribe a maximum rate of 45 cents and $37\frac{1}{2}$ cents per hundred on steel and iron products between Pueblo and certain cities on the Pacific Slope. This seems to have been done by the court on the same theory as by the commission; that is to say, by determining with reference to past rates what was a reasonable charge, and then enjoining the defendant from charging more in the future than it had found to be reasonable compensation in the past. In the cases already cited the reasoning of the court by which it reached the conclusion that the interstate commerce commission has no power to fix maximum or minimum rates, either directly or indirectly, is founded upon the fundamental proposition that the fixing of rates for interstate carriers involves an exercise of legislative as distinguished from judicial power, and that the power does not belong to the commission, because it was not granted by the interstate commerce act. For much stronger reasons the power to fix a schedule of rates for interstate carriers does not belong to the federal courts, because congress has not attempted to delegate that authority to the courts, even if it could devest itself of that legislative function, and impose it upon the judicial branch of the government.

It is urged, however, in behalf of the complainant below, that although the interstate commerce commission is not empowered to fix either a maximum or minimum rate upon an independent consideration of what is a reasonable charge, yet, when carriers have themselves established a rate between two points, the commission may fix a rate to or from an intermediate point by declaring that it shall be a certain proportion of the established through rate. Upon this ground it is said that so much of the order of the commission of November 25, 1895, as made the rate from Pueblo, Colo., to San Francisco 75 per cent. of the rate from Chicago to San Francisco was valid, and may be upheld, although that portion of the order fixing an absolute rate of 45 cents and $37\frac{1}{2}$ cents per hundredweight was void and in excess of its power. The decisions of the supreme court in Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935, and in Texas & P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940, are principally relied upon in support of this contention. With reference to this point it may be said that both of the cases last cited dealt mainly with the long and short haul clause con-

tained in section 4 of the interstate commerce act (1 Supp. Rev. St. p. 530). In that clause of the act, congress, in the exercise of its legislative power to fix rates, has enacted "that it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance. * * *" In the first of the cases last cited several railroad companies, as the court found, had formed a joint through line between two points in different states over which merchandise was carried under through bills of lading. The rate charged to an intermediate point (Social Circle) on this joint line was 30 cents per hundred greater than the through rate for the longer distance, although the circumstances and conditions of the carriage were substantially the same. The action of the carriers in exacting a higher rate for the shorter distance was therefore in open violation of the rate prescribed by congress. The interstate commerce commission made an order commanding the carriers to desist from this violation of the law, and the supreme court affirmed this part of the order. In the second case above cited the commission had made and sought to enforce an order that freight received from abroad by water, and destined to an inland point under a through bill of lading from abroad, should be carried from the port at which it was received to the inland point at the same rate charged from such port to the inland point for other like freight of a domestic character. The supreme court declined to enforce this order of the commission, holding that the conditions under which the two classes of traffic were carried were dissimilar; that the dissimilarity of the conditions should have been considered by the commission, inasmuch as they might have been found to be of such a character as justified the carrier in transporting merchandise received from abroad to the inland point at a less rate than it charged on domestic or local traffic.

Considering the questions which were involved in these cases and the points adjudicated, we discover nothing therein which impairs the force of the later decisions in Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243, and in Interstate Commerce Commission v. Alabama M. Ry. Co., 168 U. S. 144, 161, 18 Sup. Ct. 45, 42 L. Ed. 414, holding that the interstate commerce commission has not been vested with the legislative power to prescribe rates, either directly or indirectly. Prescribing a rate from Pueblo, Colo., to San Francisco, Cal., by reference to a rate that had theretofore been established by carriers between Chicago and San Francisco, involved the exercise of legislative functions to the same extent as fixing the rate between the former points on an independent consideration of what would be a reasonable compensation for the service. In either event, far-reaching questions of public policy arise, and many circumstances and conditions affect the question to be solved, so that it cannot be said that the problem of fixing a reasonable rate from Colorado points to the Pacific Slope became a simple one involving no exercise of legislative discretion, when

it appeared that the carriers had established a rate from Chicago to Pacific Coast points. It must also be borne in mind that in the case in hand we are not called upon to deal with a joint through line, and with a rate to an intermediate point on that line, which, by the express command of congress, cannot be made greater than the through rate, if the conditions of carriage are substantially the same. No joint through line under a common control and management is disclosed by the present record. Besides, the commission by its order of November 25, 1895, did not enjoin that the rate for the short haul from Pueblo to San Francisco should not exceed the rate for the long haul from Chicago, but it went beyond that limit, and undertook to declare that the rate for the shorter distance should not exceed three-fourths of the rate for the longer distance, thereby assuming to establish a rate by relation. We feel constrained to hold that the commission exceeded its authority in this part of the order, and that it had no more power to fix a rate from Pueblo to San Francisco by relation to the theretofore existing rate from Chicago to San Francisco than it had to fix the former rate upon an independent consideration of what would be a reasonable charge.

It is further insisted by the complainant below that in view of the allegations contained in the second count of its bill, wherein threatened violations of the interstate commerce act are averred, it was entitled to injunctive relief on general equitable grounds; that is to say, because the damage to be apprehended from the threatened wrongful acts was incapable of being adequately redressed at law. It will be observed that by the second clause of the restraining order, which is quoted above in substance, the defendants were restrained from demanding unreasonable rates, from giving undue and unreasonable preferences to persons or localities, or from subjecting the complainant to an unreasonable disadvantage, etc. This clause of the order might possibly be upheld, but it is not apparent that any special advantage would result to the complainant from an order couched in such general terms, which merely repeats the general admonitions of the interstate commerce act. Such an order does not give any additional sanction to the statute; neither does it forbid the doing of any specific acts. It simply leaves the questions whether the threatened rate is reasonable, or whether it would operate as an undue preference or as an unreasonable discrimination, to be tried and determined in a proceeding for contempt before a chancellor, instead of being tried in the usual way before a court and jury, in an action for damages, after the rate has been exacted or actually demanded on a tender of property for shipment. Perceiving, apparently, that the general language of the order left all vital questions undetermined and open for consideration in supplementary proceedings, the trial court next addressed itself to the task of fixing a maximum rate to be thereafter observed, and in the third paragraph of the restraining order prescribed such a rate, and commanded the defendants to conform thereto. In so acting the trial court, in our opinion, exceeded its lawful powers. In the first instance interstate freight rates must be established and put in force by the carrier, or by the national legislature, or by some commission or administrative body on whom the authority to prescribe rates has been

101 F.—50

duly conferred by the national legislature. When the carrier promulgates a schedule of rates without previous conference with its patrons, it acts under the mandate of the statute and the common law that all rates must be fair and reasonable, and under and subject to the rule that it may be called to account by the shipper in an action at law for damages, provided any unreasonable or unjust rate or charge is either exacted from the shipper or demanded. When a rate that has been exacted or demanded is challenged on the ground that it was unreasonable or unjust, it is within the province of a court and jury to determine the issue so raised, and to redress the wrong, if one has been committed; but, before an alleged unreasonable rate has been either paid or demanded on an actual tender of merchandise for shipment, it is not within the legitimate province of a court of equity to interpose and fix a maximum rate, and thereupon enjoin the carrier from demanding more than the rate so established. Such an order effectually deprives an interstate carrier of its right to change and fix rates which is conceded to it by the interstate commerce act. It is tantamount both to making a contract between the shipper and the carrier, and to an exercise of the legislative power of prescribing rates, neither of which powers properly belongs to a court of equity. Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 167 U. S. 479, 493, 17 Sup. Ct. 896, 42 L. Ed. 243; Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184, 196, 197, 16 Sup. Ct. 700, 40 L. Ed. 935; Express Cases, 117 U. S. 1, 29, 6 Sup. Ct. 542, 628, 29 L. Ed. 791; Atchison, T. & S. F. R. Co. v. Denver & N. O. R. Co., 110 U. S. 667, 685, 686, 4 Sup. Ct. 185, 28 L. Ed. 291; Pullman Palace-Car Co. v. Missouri Pac. Ry. Co., 115 U. S. 587, 598, 6 Sup. Ct. 194, 29 L. Ed. 499; Little Rock & M. R. Co. v. St. Louis S. W. Ry. Co., 27 U. S. App. 380, 387, 11 C. C. A. 417, 63 Fed. 775; Little Rock & M. R. Co. v. St. Louis, I. M. & S. Ry. Co. (C. C.) 41 Fed. 559, 563.

Aside from the foregoing considerations, we perceive no reason why the remedy at law for the threatened wrong should be pronounced ineffectual or inadequate. The damages that the complainant will sustain if it is right in its contention as to the unreasonableness of the proposed rates can be ascertained by a court and jury, while it is not suggested that the defendant company is insolvent, or that it will be unable to respond for such damages as a jury may assess. Besides, a single verdict before a jury establishing the unreasonableness or discriminating character of the proposed rate would probably lead to a withdrawal of the rate, and avoid the necessity of further actions. But, be this as it may, we are of opinion that so much of the restraining order from which the appeal is taken as afforded any substantial relief to the complainant company, namely, that part thereof which prescribed a maximum rate, and enjoined the defendant company from demanding greater compensation, was in excess of the power of the court, and cannot be upheld. It may well be that the interstate commerce act would be 'much more effectual in accomplishing the objects which it was designed to accomplish if the commission provided for therein was empowered to prescribe a schedule of maximum rates in cases like the one in hand. But that power, it seems, has not been

conferred, and the courts cannot enlarge the authority of the commission by enforcing orders of that body which it has no power to make. Neither can the courts undertake to name a maximum rate in advance, and enjoin a carrier from violating it.

There were some other questions of a jurisdictional nature discussed at the bar, but we have not deemed it expedient or necessary on the present occasion to examine them critically, and accordingly shall express no opinion thereon. In view of what has been said we conclude that the decree below should be reversed, with directions to dismiss the bill of complaint; and it is so ordered.