# Gulf Compress Co. *v.* Harris, Cort-
# ner & Co.

### *Bill for Mandatory Injunction to Reduce Rates.*

(Decided June 300, 1908.   Rehearing denied Feb. 5, 1909.
48 South. 477.)

1. *Warehouseman; Public Warehouses; Statute.*—A domestic bus-
iness corporation, organized for private gain, with power to engage in
general storage and compress business. does not become a public
service corporation, because of having taken out license as reqiured
by section 6123, et. seq., Code 1907.   At most only its business as a
warehouseman is affected with a public interest.

2. *Equity: Jurisdiction.*—Unless jurisdiction is conferred by stat-
ute, a court of equity is without jurisdiction of a cause where a
plain and adequate legal remedy exists; and where a wrong can
be compensated by money, a court of equity will not assume jurisdic-
tion because of such adequate legal remedy; where the question is
one of damages to individual or property rights, the damage must be
in its nature irreparable or incapable of money measurement, to war-
rant the assumption of jurisdiction by a court of equity, unless
coupled with some other independent matter of equitable cognizance.

3. *Same.*—A court of equity is without jurisdiction to grant re-
lief against a public warehouseman exacting overcharges for storage,
since an action for money had and received gives a complete and
adequate relief.

4. *Same; Multiplicity of Suits.*—One engaged in the business of buying and selling cotton who pays overcharges for the storage of cotton in a public warehouse, may recover in one action all of the overcharges paid for the cotton season, or may maintain several actions at law therefor, so equity is without jurisdiction to give relief on account of preventing a multiplicity of suits.

5. *Same.*—Equity has no jurisdiction to fix a schedule of prices to be charged by a public warehouseman for receiving, storing and handling goods, and in the absence of any other ground of equitable relief will not assume jurisdiction merely on the question of the reasonableness of the rates.

6. *Injunction; Grounds of Relief; Irreparable Injury.*—A dealer cannot invoke equity to restrain the asking and collecting of overcharges on the theory that he will suffer irreparable injury, where such overcharges are too small to warrant the conclusion that the dealer's business would be ruined thereby, and hence, the dealer was not entitled to injunctive relief.

7. *Contracts; Interests of Third Person.*—Where the owner of the compress and warehouse leased the same to a corporation engaged in a general storage and compress business for a term of years, and a schedule of maximum charges were fixed in the lease, a third person engaged in the business of buying, selling and shipping cotton at that point had no such interest in the lease as would entitle him to enforce the provisions fixing the maximum charges, nor was he entitled in equity to compel the corporation to comply with such provision on the ground that the contract was made for his benefit.

8. *Rates; Fixing; Legislative Function.*—It is a legislative and not a judicial function to prescribe rates for a public service corporation, or one affected with a public interest.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Harris, Cortner & Co., against the Gulf Compress Company. From a decree overruling a motion to dismiss the bill for want of equity, a demurrer to the bill, and a motion to dissolve a preliminary injunction, defendant appeals. Reversed and rendered.

BROWN & KYLE, FITZHUGH, BIGGS & FITZHUGH, and CABANISS & BOWIE, for appellant. The effect of the injunction as applied for and as issued in this case depends upon the power of the court of equity to prescribe rates to be charged in the future by the defendant company. This is a legislative and not a judicial power.—*Interstate Com. Com. v. R. R. Co.*, 167 U. S. 479,

and authorities therein cited.—*Madison v. Madison Gas Co.*, 108 N. W. 65, and authorities therein cited; *R. R. Co. v. Stockyard*, 45 N. J. E. 50; Beal & Wyman R: R. Rate Regulation, sec. 1304; *Western U. Tel. Co. v. Myatt*, 98 Fed. 335; *State v. Johnson*, 61 Kan. 843; *Munn. v. Ill.*, 94 U. S. 115; *Interstate Com, Com v. Ala. Mid Ry. Co.*, vfr U. S. 144. Even the legislative would be powerless to prescribe rates unless the property is devoted to a public use and a public purpose, or affected with a public interest.—*Munn v. Ill., supra.* The rates prescribed by the legislature must be reasonable and afford a fair return upon the investment.—154 U. S. 362; 169 U. S. 466; 167 U. S. 479; *Cotting v. Kan. City Stockyards*, 183 U. S. 79. The court being without power to prescribe rates for the future, it cannot under the plea of preserving the status quo require the defendants to perform services for the future at any given rate.—*Interstate Com. Co. v. S. N. O. & T. R. R. Co.*, 167 U. S. 479, and authorities there cited.

The injunction should be dissolved.—*Southern Pac. Co. v. Colorado*, 101 Fed. 779; 62 Fed. 690; 64 Fed. 981; *Fredericks v. Huber*, 180 Pa. St. 572; 1 High on Injunc. see 2. The court had no jurisdiction in the absence of other equitable grounds of relief to adjudge the rates charged by defendant to be unreasonable.—Authorities cited, supra; 1 Pomeroy's Eq. Jur. Sec. 263, note 2; *Richmond v. D. R. R. Co.*, 31 Ia. 422; *Moses v. Mayor*, 52A Ia. 198; *Turner v. City of Mobile*, 135 Ala. 73; *Youngblood v. Youngblood*, 54 Ala. 486; *Brown v. Brown*, 68 Ala. 114; *M. & F. R. R. Co. v. McKenzie*, 85 Ala. 546. Complainants had no such interest in the contract of lease made between the Gulf Compress Company and the Decatur Compress Company, in 1904, and which had been rescinded, as entitled them to enforce any of the provisions of said contract, even if said

lease had not been annulled and abrogated.—9 Cyc. 380, 349, s. s. 41 Am. Rep. 103; *Davis v. Caloway*, 30 Ind. 112, 280, s. c. 25 Am. Rep. 195; *Gilbert v. Sanderson*, 56 Ia. and authorities there cited; *Vrooman v. Turner*, 69 N. Y. s. c. 95 Am. Dec. 671; *Durnherr v. Rau*, 135 N. Y. 219.

E. W. GODBEY, and CALAHAN & HARRIS, for appellee. The appellant possessed the power of eminent domain.— Acts 1903, p. 317; *In re Stewart*, 33 L. R. A. 429; *Sadler* Acts 1903, p. 317; In re Stewart, 33 L. R. A. 429; Sadle *v. Langham*, 34 Ala. 324; *Armstead v. Camp.* 89 AMh. Dec. 223; *Valley Co. v. Brown*, 7 W. Va. 191. A warehouse is a business public in its nature.—*St. Paul v. C. M. & St. P. R. R. Co.*, 34 L. R. A. 190; *I. & B. St. L. R. & C. Co. v. St. Louis, supra; B. S. R. Co. v. St. Louis & E. E. Co.*, 8 L. R. A. 804; *Munn v. Ill.*, 24 L. Ad. 83; *Brown v. Beatty*, 69 Am. Dec. 393; *Norffleet v. Cromwell*, 16 Am. Dec. 791; *Brass v. State of N. D.*, 153 U. S. 404; *Maine v. Edwards*, 25 L. R. A. 506; *A. L. S. C. Co. v. C. L. S. Exch.*, 18 L. R. A. 200. The warehouse business is the dominant one.—*Hanna v. People*, 64 N. J. Rep. 781; Beal & Wyman on R. R. Rate Regu. sec. 28; *Budd Case*, 5 L. R. A. 568; *Orient Co. v. Northern Co.*, 78 Pac. 1038. The public use is synonymous with public benefit.—*Aldridge v. Tuscombia R. R. Co.*, 2 Stew. & P. 199. There is no charm in mere number of patrons.— *Brown v. Gerald*, 70 L. R. A. 482; *Zeigler v. Menges*, 16 Am. St. Rep. 316. It is not necessary that eminent domain be a power expressly enumerated.—*U. S. v. Gettysburg, etc.*, 160 U. S. 683. Warehouses are public utilities under the statute.—Acts 1907, p. 371; *C. E. Co. v. People*, 43 L. R. A. 666; *Nash v. Paige*, 44 Am. Rep. 495; *A. L. S. C. Co. v. C. L. S. Exch, supra; Maine v. Edwards, supra.*

DOWDELL, J.—The appeal in this case is prosecuted from an interlocutory decree of the chancellor overruling the respondent's motion to dismiss the bill for want of equity, demurrer to the bill, and motion to dissolve the preliminary injunction for want of equity in the bill, and on the denials in the sworn answer of the material allegations of the bill.

The averments of the bill, in substance, are that the complainants, appellees here, are engaged in the business of buying, selling, and shipping cotton, and have been so engaged for more than a year, with their headquarters at Decatur, Ala., handling in their said business from 20,000 to 25,000 bales of cotton per annum, and will probably handle and deal in as many as 25,000 bales the current season; that they have a number of employes engaged in their service in the conduct of their business at a large expense to complainants; that the defendant, the Gulf Compress Company, is an Alabama corporation, with charter powers authorizing it to engage in the general storage and compress business; that the Gulf Compress Company in 1904 leased the plaint of the Decatur Compress Company, an Alabama corporation of like powers, for a term of five years, at an annual cost to it of $10,000 to be paid as rent; that said plant has been conducted prior to said lease by the Decatur Compress Company, and since by the Gulf Compress Company under said lease, as a public warehouse and compress for hire and compensation, inviting dealers such as complainants, and the public, to store their cotton; that said cotton compress and warehouse is located in the city of Decatur and on lines of railway which furnish shipping facilities in the handling of cotton, and the complainants are dependent upon the defendant's warehouse and compress and facilities "for the proper conduct of their (complainants') business;" that

in the lease contract under which the Gulf Compress Company operates said plant, a schedule of maximum charges was fixed by the contracting parties during the terms of the lease, and that until recently the Gulf Compress Company has been conforming to the schedule so fixed, but since the close of the cotton season of 1906-7, the respondents, the Gulf Company and the Decatur Company, have annulled said lease, at least in so far as it relates to the schedule of maximum charges, and that under the new arrangement there is no limitation upon the respondent the Gulf Company in fixing the amount it will charge for services in the conduct of its business; that a new schedule of rates was made by the Gulf Company for the cotton season of 1907-8, which in certain particulars specified increased the charges incident to its business as warehouseman, and that such increased charges are unreasonable; that the Gulf Company has refused to receive complainants' cotton and render the services which has been its custom to render under the old schedule, unless complainants will submit to and pay the charges fixed in the new schedule, which it is alleged will be "practically ruinous" to the complainants. It is averred that the plant operated and conducted by the Gulf Company is the only one of its kind maintained in the city of Decatur, or in the county, and that the Gulf Company has taken out a license as required of warehousemen by an act of the Legislature approved March page 371, and which is incorporated in the Code of 1907 (see Gen. Laws passed at first session 1907), as section 6123 et seq., and that by reason of being the only warehouse of its kind in said city or county it has a virtual monopoly. The lease contract between the Gulf Company and the Decatur Company, and under which the plant is being operated by the former com-

pany, is set out as Exhibit A to the bill. The old and new schedules of rates and charges are set out as Exhibit B and C to the bill. It is averred that the old rates had been maintained for three years, and that, in reliance upon a continuation of the old rates, the complainants during the summer months of 1907, and prior to the beginning of the cotton season of 1907-8, in making preparations for the conduct of their business in the handling of their cotton for said cotton season of 1907-8,incurred heavy liability in the employment of hands, etc., and this without any notice or knowledge of the proposed change in the schedule of rates and charges.

It will be observed from the foregoing statement that the alleged wrong complained of is based upon the increase in rates and charges prescribed in the new schedule over those in the old, and as being excessive and unreasonable. The bill is directed against the Gulf Compress Company as warehouseman, no complaint being made as to the compress feature of respondent's business. The relief sought is injunctive. There is no charge of discrimination against the complainants in favor of any other customer of the respondent, but all are put upon the same basis and with like treatment.

The bill, according to its averments and prayer for relief, is predicated upon the theory that the business of the respondent is "affected with a public interest" either by virtue of the act of March 7, 1907, declaring all warehouses in incorporated cities and towns for the storage of cotton or other articles of value for compensation to be public warehouses, or by reason of its being a monopoly in fact. However this may be, whether "affected with a public interest" or not, we need not decide that being unnecessary to a conclusion of the case under our view of the law applicable to the facts

as shown by the bill, and therefore for the sake of argument it may be admitted that the business is one "affected with a public interest." But it is proper to here state that the respondent Gulf Compress Company is not in any sense a "public service" corporation, nor does the business carried on by it characterize it as such. It possesses no element of governmental power conferred upon it by law as in the case of a railroad company, serving the public as a common carrier of passengers and freight. It is strictly a private business corporation, organized for private gain and not for public service—a private business enterprise like that of an incorporated concern to carry on a merchandise business or a manufacturing business. And the fact that the statute declares that part of the plant conducted as a warehouse for the storage of cotton for compensation to be "a public warehouse" does not change the private nature and character of the corporation, or convert it into a "public service" concern, in the sense in which those terms are used and understood. The most that can be said of the effect of the statute is to say that it impresses upon the warehouse business the character of its being "affected with a public interest." It is well to observe in this connection that the act of March 7, 1907, does not prescribe any rates or charges for storage, or undertake in any manner to regulate the business conducted or carried on in such "public warehouses." There are privileges and powers possessed by "public service" corporations and exercised by them, governmental in character, which may not be conferred upon a private business corporation, as, for instance, the right of eminent domain, although the business carried on by the latter may become "affected with a public interest." This distinction has been taken in many of the adjudged cases. We have

made the above observations in respect to the difference between a "public service concern" and one only "affected with a public interest," because equitable remedies might be sought and applied in the former, when they would not be in the latter.

Conceding, then, for the sake of argument that the respondent the Gulf Compress Company, in the warehouse branch of its business, is conducting and carrying on a business "affected with a public interest," the first question with which we are confronted at the very threshold is, Does the bill on the facts stated present a case for equity jurisdiction? It is an elementary principle that a court of equity is without jurisdiction to hear and determine a cause wherein a plain and adequate remedy may be had in a court of law, unless it be that jurisdiction is conferred by statute. And it was in this doctrine of the failure of a court of law to furnish such plain and adequate remedy for the enforcement of rights and redress of wrongs in certain cases that the court of chancery had its origin.

As a rule, where the wrong complained of can be redressed and fully compensated in damages by a money standard, a court of chancery will not assume jurisdiction for the reason that an adequate remedy exists at law. Where, then, the question is one of damage to individual or property rights, to warrant a court of equity in the assumption of jurisdiction, the damage must be in its nature irreparable, or incapable of measurement in dollars and cents, or unless coupled with some other independent matter of equitable cognizance. These are elementary principles.

Applying these principles to the case before us, let us inqure what, if any, fact is alleged that will give a court of equity jurisdiction. In its first analysis, the case presented by the bill is that the respondent is now,

and has been since 1904, carrying on a warehouse business in the city of Decatur for the storage of cotton for compensation; that such warehouse is by the statute declared to be a "public warehouse," and therefore such business is "affected with a public interest;" that the complainants are engaged in the business of buying, handling and shipping cotton, and in the conduct of complainants' business it becomes necessary for them to patronize the respondent, its warehouse being the only one of the kind in the city of Decatur; that the respondent is demanding tolls for the storage and handling of cotton in its said warehouse business under a new schedule of rates and charges, which is in excess of the old schedule, and that said increase in rates and charges is unreasonable; and that the respondent refuses to receive, store, and handle complainants' cotton unless complainants consent to pay the increased tolls. It is manifest from the foregoing statement that the wrong complained of consists in the exaction of overcharges. For this there is a complete and adequate remedy at law in an action for money had and received for the overcharges paid.—*Mobile & Montgomery R. R. Co. v. Steiner, McGhee & Co.*, 61 Ala. 559. Moreover, it may be asked, if the defendant corporation be under a legal duty to receive and handle the complainants' cotton in accordance with the rates prescribed in the old schedule, as is alleged in the bill, why may it not be compelled to the performance of this duty by mandamus?

It is true it is alleged in the bill that if complainants submit to and pay the increased charges under the new schedule of rates it will be practically ruinous to the complainants. This, however, in the light of other facts contained in the bill, can but be regarded as a conclusion of the pleader, and not as the statement of a fact. The difference in amount produced by the alleged overcharges

as shown by the bill is too inconsiderable to warrant
the conclusion that ruinous results would follow to a
business of the kind and character as that engaged in
by the complainants, when it is to be remembered that
the overcharges so paid are not a permanent loss, and
may be immediately recovered back in an action at law.
We are unable to see how or in what way the complain-
ants would suffer irreparable injury and damage from
the alleged course of conduct of the respondent.

It is urged that the complainants would be put to
numerous suits at law, and hence the bill has equity
upon the doctrine of the prevention of a multiplicity of
suits.   It cannot be denied but that the complainants
might in one action at law sue to recover all of the
overcharges paid for the entire cotton season.   One
suit or a multiplicity of suits therefore would be a mat-
ter of complainants' own election.   There being no neces-
sity for a multiplicity of suits the reason for the inter-
ference of a court of equity on the principle mentioned
fails.

It is urged as another ground of equity in the bill
that the schedule of maximum rates named in the lease
contract   entered into between the Gulf Company and
the Decatur Company was made and intended for the
benefit of the complainants and others engaged in like
business, and that having been made for their benefit,
although not so expressly declared, the contracting
parties have no right to annul the same, and the com-
plainants, as such beneficiaries, have a right to have the
same enforced in equity.   There is no provision, state-
ment, or expression in the contract by which such inten-
tion on the part of the contracting parties is shown.   The
fact that one not a party or privy to a contract is in-
cidentally benefited under it is no reason for declaring
that the contract was made and intended for his benefit.

23—8

[Gulf Compress Co. v. Harris, Cortner & Co.]

We are clearly of the opinion that the complainants
had no such interest in the lease contract made between
the Gulf Company and the Decatur Company in 1904,
and which the contracting parties had rescinded, as
entitled them to enforce any of the provisions of said
contract, even if the same had not been annulled.—9 Cyc.
380, and authorities there cited; *Vrooman v. Turner,* 69
N. Y. 280, 25 Am. Rep. 195; *Gilbert v. Sanderson,* 56
Iowa, 349, 9 N. W. 293, 41 Am. Rep. 103; *Davis v. Callo-
way,* 30 Ind. 112, 95 Am. Dec. 671; *Durnherr v. Rau,*
135 N. Y. 219, 32 N. E. 49; *National Bank v. Grand
Lodge,* 98 U. S. 128, 25 L. Ed. 75; *Lovejoy v. Bessemer,
etc.,* 146 Ala. 379, 41 South. 76, 6 L. R. A. (N. S.) 429.

The law, we think, is too well settled to admit of doubt
that the prescribing of rates for a "public service" corpo-
ration or one "affected with a public interest" is a legis-
lative, and not a judicial, function. To this effect are
the adjudications both state and federal. To us it is
equally clear in the case at bar that a court of chancery
has no jurisdiction or power to fix a schedule of prices
to be charged by the respondent for receiving, storing,
and handling complainants' cotton.—*City of Madison
v. Madison Gas & Electric Co.,* 129 Wis. 249, 108 N. W.
65, 8 L. R. A. (N. S.) 529; *W. U. Tel. Co. v. Myatt,* (C.
C.) 98 Fed. 342; *Neb. Tel. Co. v. State,* 55 Neb. 627,
76 N. W. 171, 45 L. R. A. 113; *So. Pacific Co. v. Colo.
Fund & Iron Co.,* 101 Fed. 779, 42 C. C. A. 12; *InterState
Com. Com. v. R. R. Co.,* 167 U. S. 479, 17 Sup. Ct. 896,
42 L. Ed. 243; *Reagan v. Farmers' Loan & T. Co.,* 154
U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; *A. T. & S. F.
R. R. Co. v. Denver & N. O. R. R. Co.,* 110 U. S. 682, 4
Sup. Ct. 185, 28 L. Ed. 291; *Smyth v. Ames,* 169 U. S.
466, 18 Sup. Ct. 418, 42 L. Ed. 819; *R. R. Co. v. Stock-
yards, etc.,* 45 N. J. Eq. 50, 17 Atl. 146, 6 L. R. A. 855.
From the foregoing authorities the principle is likewise

deducible that a court of chancery, in the absence of other equitable ground of relief, will not assume jurisdiction in any case upon the question merely of the reasonableness or unreasonableness of rates and charges.

But we need not pursue this line of discussion, since in our opinion, the case is determinable upon the proposition that the complainants have an edequate remedy at law for a redress of the wrongs complained of. Our attention has been called to the recent case of *Exparte Young*, 209 U. S. 166, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, cited in supplemental brief of counsel for appellee as an authority for equity jurisdiction in the case before us. The facts in that case are materially different from the facts in the case at bar. The complicated facts in the case cited, which the court say render it difficult, if not impossible, for a court of law to determine the issues do not obtain in the present case. The case of *R. R. Co. v. Stockyards, etc., supra,* is more analogous in fact and principle to the one under consideration. That was a case in chancery, and the bill was dismissed on the ground of an adequate remedy at law.

Our conclusion is that the bill is without equity, and the chancellor erred in not dismissing the same and dissolving the injunction on the respondent's motion.

Reversed and rendered.

TYSON, C. J., and SIMPSON, ANDERSON, and DENSON. JJ., concur. McCLELLAN, J., dissents.