(132 So. 871)

**FARMERS' & MERCHANTS' BANK v. TALLEY.**

**7 Div. 606.**

Court of Appeals of Alabama.

Oct. 28, 1930.

Rehearing Denied Jan. 13, 1931.

John B. Isbell, of Ft. Payne, and Culli, Hunt & Culli, of Gadsden, for appellant.

166

Chas. J. Scott and J. A. Johnson, both of Ft. Payne, for appellee.

RICE, J.

· G. O. Talley, plaintiff in·the court below, sold to one C. C. Cole, on December 20, 1928, four negotiable cotton warehouse receipts payable to order of bearer, and received from said Cole three checks drawn on Farmers' & Merchants' Bank, defendant in the court below. Said checks were dated December 20, 1928, signed by C. C. Cole Cotton Company, which was the trade-name under which said Cole bought and sold cotton, and were as follows: One for the sum of $146.36, payable to the order of plaintiff, G. O. Talley; one for the sum of $84.25, payable to the order of T. B. Beck; and the other being for the sum of $77.05, payable to the order of Odis Hammonds. The checks payable to order of Beck and Hammonds, respectively, were duly indorsed by them in blank. The transaction in question took place at Ft. Payne, Ala., at which place the defendant bank is located ` and does business as a bank under the laws of Alabama.

The plaintiff, Talley, took his checks to Collinsville, Ala., and there deposited the same with his bank, the first National Bank of Collinsville, Ala., and about the 25th or 26th of December the checks were returned to plaintiff by his said bank at Collinsville. unpaid, with notation that they were not paid by reason of insufficient funds.

On December 31st, plaintiff took his said checks to defendant bank at Ft. Payne, presented the same at the cashier's window, and requested payment, and payment was refused.

· The plaintiff brought this suit to recover the aggregate sum of said three checks, viz.

$307.66, and the suit as originally filed was against said C. C. Cole and defendant Farmers' & Merchants' Bank, but by amendment the name of C. C. Cole was eliminated as a party defendant, and the trial resulted in a verdict for the plaintiff for the sum of $318.-80, from the judgment on which defendant brings this appeal.

It was without dispute in this case that, at the time of the transactions in question, C. C. Cole was engaged in the business of buying and selling cotton at Ft. Payne, Ala., on his own account, under the trade-name of C. C. Cole Cotton Company, and that he maintained an office in the rear of defendant's bank, and that the sale of the warehouse receipts in question took place in said Cole's office.

·It was the contention of plaintiff, on the trial of this case, that defendant bank had agreed with Cole that Cole could issue his checks drawn on defendant bank for cotton purchased by him during the day, and that the checks would be paid as an overdraft, and that at the end of each day's business Cole was to deposit with the defendant the warehouse receipts purchased by him during the day as collateral security to protect the overdraft growing out of the payment of Cole's checks on the defendant bank.—'

On the other hand, it was the contention of defendant that Cole had an account with defendant as a depositor, and that it never at any time agreed with Cole that it would cash Cole's checks in the manner as contended by plaintiff, and that the only agreement with Cole was that it would cash his checks if he had on deposit sufficient money with which to pay the checks, and that it would also cash his checks and carry the amount as an overdraft provided Cole had on deposit with defendant bank sufficient number of warehouse receipts to protect the defendant in paying out checks as an overdraft.

The case was submitted to the jury on three counts of the complaint, viz. counts 1, C, and D.

Count 1 of the complaint was in substantially the Code form for money had and received.

Both counts C and D, which are set out in the report of the case, appear to be based upon an agreement made between one Cole, a cotton buyer, and defendant appellant, for "their mutual benefit," whereby it was agreed that Cole should buy cotton during the day, issuing his checks therefor on defendant, and turning over to the defendant, at the close of each day's business, the cotton receipts for the cotton purchased during that day, and that defendant would honor or pay said checks so issued.

The evidence was without dispute that, at the time the checks in question in this suit

were presented to defendant bank for payment, Cole did not have on deposit with defendant funds sufficient to pay the same, and neither did he have at said time on deposit with defendant, warehouse receipts, or other security, of sufficient value as collateral security to protect the defendant against loss in paying said checks.

There was no evidence offered upon the trial of this cause tending to show that the plaintiff at the time he sold the warehouse receipts to Cole was acting or relying upon any agreement between Cole and defendant to the effect that defendant would pay Cole's checks regardless of whether Cole had sufficient funds to his credit with which to pay the same, Cole in turn to deposit with defendant at the end of each day's business the warehouse receipts purchased by him during the day, to secure the payment of the overdraft.

The testimony of plaintiff appellee's witness Cole was without dispute that he drew a draft on Geo. H. McFadden, Gadsden, Ala., for $3,026.31, payable to defendant bank, and that he attached to said draft thirty-four cotton warehouse receipts, included in which number were the warehouse receipts, here involved, purchased by him from the plaintiff, and that the proceeds of the sale were credited to his account by defendant, and that he received the benefit thereof.

There was no evidence tending to show that defendant knew that Cole had purchased any cotton from plaintiff and plaintiff's witness Cole testified on cross-examination, and the testimony was without dispute in the case, that he did not take any receipt from the bank for the warehouse receipts turned over to it, and that neither did he furnish the bank with the number of the warehouse receipts.

There was no evidence offered as to the market value of the cotton in question other than that plaintiff (appellee) received the checks in question from Cole for the warehouse receipts.

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Section 9207, Code 1923.

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check." Section 9203, Code 1923.

"A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same." Section 9147, Code 1923.

It is clear from the Code sections quoted that this judgment cannot rest upon the "unpaid checks" drawn by Cole on defendant bank and delivered to appellee.

As for counts C and D of the complaint, we are of the opinion and hold, that the following, if not others, of the grounds of demurrer interposed thereto, were appropriate, and should have been sustained: 1, 2, 3, 4, 5, 6, 7, 9, 10, 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 37 and 38. Vandagrift v. Masonic Home, 242 Mo. 138, 145 S. W. 448; Meyerson v. New Idea Hosiery Co., 217 Ala. 153, 115 So. 94, 55 A. L. R. 1231; Code 1923, §§ 6339, 6365; 13 C. J. p. 709, § 817; Gulf Compress Co. v. Sykes-Tweedy, 159 Ala. 669, 48 So. 481; Gulf Compress Co. v. Harris, 158 Ala. 343, 48 So. 477, 24 L. R. A. (N. S.) 399; S. R. & P. Import Co. v. American Union Bank, 122 Misc. Rep. 798, 204 N. Y. S. 755; Lancaster v. Woodward, 18 Pa. 357, 57 Am. Dec. 618; Culver v. Marks, 122 Ind. 554, 23 N. E. 1086, 7 L. R. A. 489, 17 Am. St. Rep. 377; 6 R. C. L. 886. In greater part, any observations we might make as to the reasons for our so concluding would be but a repetition of the language of the several grounds of demurrer, which are set out in the report of the case. We might, though, quote, as conclusive of one fatal deficiency in the contract or agreement alleged to have existed between Cole and the defendant appellant, and sought to be made the basis of said counts C and D, the following principle of law, to wit: "The fact that one not a party or a privy to a contract is incidentally benefited under it is no reason for declaring that the contract was made and intended for his benefit." 6 R. C. L. 886, citing Gulf Compress Co. v. Harris, C. & Co., 158 Ala. 343, 48 So. 477, 24 L. R. A. (N. S.) 399. Under any view, as we see it, the facts alleged in these counts as intending to show that the alleged contract between Cole and defendant was made for plaintiff appellee's benefit, in such sort that he might maintain a suit thereon, are not as strong in their legal effect as those held insufficient in the case of Gulf Compress Co. v. Harris, C. & Co., supra.

In this case it is apparent that the alleged promises of the alleged agreement between Cole and the bank were not intended by them for the benefit of the plaintiff. It is obvious that the thing in the mind of both Cole and the bank was not to secure the payment of the amount agreed to be paid to the sellers of cotton. The contract, as indicated by the allegations of counts C and D, was not made for the benefit of the sellers of cotton. The benefit to them was incidental. Gulf Compress Co. v. Harris, C. & Co., supra. The apparent sole purpose of Cole in making the contract was to obtain a line of credit, while that of the bank was to make loans to Cole.

■■ So far as count 1, the count claiming for "money had and received," is concerned, we observe: "Such an action (money had and received) is appropriate whenever the defendant has money in his possession which belongs of right to the plaintiff. * * * This right in the plaintiff to the money which bestows on him the right to maintain the action for it must arise in some form, where the law implies a promise on the part of defendant that he will pay it to the plaintiff, and the only privity between the parties that needs be shown arises from this promise, implied by law, that the defendant, having money in his hands that belongs, ex aequo et bono to the plaintiff, will pay it over to him." Hudson v. Scott et al., 125 Ala. 172, 28 So. 91, quoted and made a part of the opinion of the Supreme Court in the case of Farmers' Bank & Trust Co. v. Shut & Keihn, 192 Ala. 53, 68 So. 363, 365. No such situation exists here. The cotton receipts were negotiable instruments. Agricultural Code of 1927, § 412. And the undisputed testimony shows that they had been lawfully negotiated by Cole to McFadden. Id. § 452. The money here sued for is the proceeds of the sale of the receipts in question, and the cotton, by Cole to McFadden, with the bank (appellant) chargeable with no notice of the manner of Cole's acquiring possession of same. We see no way in which the law would imply a promise on the part of the bank to pay this money over to plaintiff. The proof shows that it actually paid it, by crediting his account therewith over to Cole. And this was its right and duty. To hold otherwise would, it seems to us, make shipwreck of the law of negotiable instruments. If in this particular case it may appear that the law works a hardship on the plaintiff, the natural observation is that plaintiff had it within his power to protect his interests by retaining possession of the cotton receipts until he was actually paid therefor. The trial court should, at appellants' request, have given the general affirmative charge in its favor on count one, as indeed it should have on the whole case. For the erroneous rulings we have indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.